### JAMES FIELD *vs.* CHARLES FIELD.

A fund created by a religious society for the instruction and education of children in the faith and doctrines of the society as professed at the time of the creation of the fund, cannot be diverted from its original object and destination; if a diversion be made or attempted, a *court of equity* will interpose and correct the procedure.

But a *court of law* cannot interfere; the only inquiry at law is whether the fund remains under the control of agents duly appointed, according to the laws and usages of the society, and accordingly evidence will not be received shewing that a portion of the society who have obtained the control of the fund have abandoned the faith and doctrine of the society.

Even a *court of equity* does not attempt to enforce the peculiar faith or doctrines of either party, where there is a schism in a religious society, though their existence and nature may incidentally be involved in an inquiry relative to the rights of property belonging to such society; all it does is to enforce the observance and execution of an ascertained trust.

Where, according to the laws and usages of a society, their meetings for the transaction of business are opened by a *presiding officer* who holds his office for a fixed term, and no meeting is considered duly organized unless opened by him, and such officer is prevented by the violence of members of the association from discharging his duty at the accustomed place of meeting, he and such of the society as think proper to accompany him, may retire to some convenient place adjacent and there open the meeting, and their acts and doings will be obligatory upon the society, although those who thus withdraw are a *minority* of the members of the society, it being a principle of the common law that where a society is composed of an indefinite number of persons, a majority of those who appear at a *regular meeting* of the society constitute a body competent to transact business.

Where, according to the established usages of a society, no question whatever arising at any of its meetings for consideration is decided by a majority of voices, but is determined by the presiding officer for the time being, a majority of such society have not the power to displace their presiding officer, whose term of office has not expired, and appoint another in his stead; in case of the absence of such presiding officer, or of his incompetency to

perform the duties of his office, such new appointment may be made, but not otherwise.

A member of a society having an interest in a fund belonging to it, called as a witness by a party sued for a debt owing to such fund, is competent to testify that he, as the authorized agent of the society, received payment of the debt claimed.

There is no *variance* in stating a note bearing date 4 *mo.* 1*st*, as having been made on the *first day of April*.

THIS was an action of assumpsit, tried at the Westchester circuit in September, 1830, before the Hon. JAMES EMOTT, then one of the circuit judges.

The declaration was in *covenant* on a sealed note for $575, made by the defendant, payable on demand to " James Field, treasurer to the purchase meeting school fund or his successor," bearing date "4 m. the 1st, 1817," and described in the declaration as having been made on the 1*st April*, 1817. The defendant *pleaded* that on the 18th August, 1830, he paid to *Thomas Carpenter, the successor of James Field, as treasurer to the purchase meeting school fund,* the sum of $575, with the interest thereon due, *in full satisfaction and discharge*, &c. The plaintiff *replied* that Thomas Carpenter was *not*, on the 18th August, 1830, nor at any time before or since, *successor of the plaintiff* as treasurer, &c. On the trial of the cause, the following facts appeared : In February, 1817, the plaintiff was appointed *treasurer* of an *unincorporated association* of *Friends*, called *the purchase preparative meeting*, to whom belonged a school fund of about $800 in cash, raised by contribution, and 150 acres of land devised by an individual ; in which fund the members of the *society of Friends* residing within the district of the purchase preparative meeting have a joint interest, part of which fund was lent to the defendant, and the note declared on taken. In 1828 a separation took place in the society of Friends, at their *yearly meeting* in the city of New-York, about 250 persons out of an assemblage of 1200 withdrawing from the Friends' meeting house in the city of New-York, and organizing a separate *yearly meeting :* the division withdrawing are called *Orthodox*, those remaining *Hicksites*. In June, 1828, which was the first monthly meeting of the association to which both the *plaintiff* and *Thomas Carpenter* belonged, *Henry Griffin*, the clerk of the monthly meeting, attended for

the purpose of presiding thereat, and was forcibly prevented from doing so. According to the known and established rules and proceedings of the society of Friends, no meeting, whether yearly, quarterly, monthly, or preparative, is considered organized until the clerk of the meeting takes his place at the table, makes a minute of the meeting, and reads the same. The assemblage consisted of 68 persons, 58 of whom were *Hicksites* and 10 *Orthodox*. The clerk was told that he would not be allowed to open the meeting, because he had left the yearly meeting in New-York and joined the Orthodox, which he had in fact done; whereupon the clerk, with about one-fourth or one-third of the number of persons then present retired, and under the shade of the trees the meeting was opened by the clerk, according to the usual course of business. At this meeting, thus organized, the *Orthodox Friends* were directed in their *preparative meetings* to separate from the *Hicksites*, and accordingly, since that time, the Orthodox Friends have held their separate *preparative meetings*, at one of which, to wit, in *January*, 1830, Thomas Carpenter was elected treasurer of the purchase meeting school fund, and subsequently acted as such treasurer. When *Griffin* and his friends retired from the meeting house, another person was appointed clerk by the *Hicksites*, who since then have held their *preparative meetings* and other meetings separate from the Orthodox, and continued *James Field*, the plaintiff in this cause, their treasurer, he being treasurer of the association at the disruption in June, 1828. The following regulation was read in evidence from the *book of discipline* of the society of Friends: "Meetings for discipline are subordinate and accountable in the following manner: Preparative meetings to the monthly meetings, monthly meetings to the quarterly meetings, and quarterly meetings to the yearly meetings. No quarterly meeting is to be set up or discontinued but by the yearly meeting; no monthly meeting but by the quarterly meeting; no preparative meeting, or a meeting for worship, but by the monthly meeting, with the approbation of the quarterly meeting." The *preparative meetings* of both divisions of the society have been approved by the respective monthly, quarterly and yearly meetings. The Hicksites retain possession of the meeting

houses and school houses, and control the schools and support them. It was proved also to be a rule in the discipline of the society of Friends, that at their meetings no question whatever is decided by taking a vote to ascertain the sense of the meeting, every question arising for consideration being decided by the *clerk*, who determines all questions by his judgment solely, having a regard to the *solid sense* of the meeting, gathered from opinions expressed by persons of experience and standing in the society present, and the apparent acquiescence of members. The defendant offered to prove that the *Hicksites*, to which denomination the plaintiff and the persons composing the meetings which continued him as treasurer belong, deny the scriptures to be inspired writings, and deny the divinity of Christ, two fundamental articles of faith of the society of Friends, and were not therefore Friends. The evidence was rejected. The judge also refused to permit *Thomas Carpenter* to be sworn as a witness for the defendant, he being a member of the purchase preparative meeting, and having an interest in the fund in question, and persisted in such rejection of the witness, although he executed a release to the defendant. The judge charged the jury that it would be for them to determine whether or not the monthly meeting of which *Griffin* acted as clerk was the *regular monthly meeting;* that it was not necessary that a meeting should be opened by the clerk in office; that if he had become unacceptable to the meeting for doctrine or conduct, the meeting might refuse to proceed under him, and could elect or name a clerk as they thought proper, and the jury must therefore find whether or not Carpenter had been duly appointed, according to the usage and discipline of the society; that in determining which of the purchase preparative meetings at which *Field* and *Carpenter* were elected was the regular one, he knew of no safer rule for the jury to go by than that of numbers, notwithstanding that it had been proved that Friends in their meetings do not regard majorities: on ordinary occasions he presumed such was the usage of Friends, but it was scarcely credible that in all cases they were so to be bound; it would be a surrender of all power into the hands of the clerk; and concluded by telling them it was for them to say which of the preparative

meetings was the regular one : if the *Hicksite* meeting, they must find for the plaintiff; if the *Orthodox* meeting was the regular one, then for the defendant. The jury found for the plaintiff. The defendant excepted to the above decisions and charge of the judge, and also to a decision made by him on a motion by the defendant for a *nonsuit,* founded on a variance in the date of the note, as described in the declaration and as produced in evidence. The defendant moved for a new trial. The cause was argued by

*H. Maxwell & D. B. Ogden,* for the defendant, and by

*W. Silliman & J. Tallmadge,* for the plaintiff.

*By the Court,* NELSON, J. The objection to the recovery on the ground of variance in respect to the date of the instrument described in the declaration is untenable. There is none in substance or fact, the pleader not professing to set out the instrument *verbatim.*

The judge erred in excluding the testimony of Thomas Carpenter, for under no view of the case that we can take was he directly interested in the event of the suit. He had an interest in the fund in common with the other contributors or members of the purchase preparative meeting, but he was called against that interest, so far as it was immediately involved in the issue then trying; at all events, as between the immediate parties to the suit, his interest was in favor of the plaintiff, as the fund, if collected, was for the benefit of the proprietors ; and as regarded his position, upon all the facts disclosed on the trial, we think he was indifferent, or at least, his interest was neutralized. It is said he was interested in sustaining the payment of the money to himself as treasurer, but we apprehend it would be difficult to shew in what way he could be thus interested. Admitting that he would be, at law or in equity, bound to refund the money to the defendant, if he could not sustain his right or title to receive it as treasurer, the result of this suit did not necessarily determine that question, as he was not a party to it, and would not be bound by it. Whether he would be bound to refund the money, would

depend upon a suit directly between the parties themselves. A recovery by the plaintiff in this case would have, perhaps, an essential bearing upon that question, but would not control it, and the interest would be too remote and contingent to affect the competency of the witness. But conceding that upon the recovery by the plaintiff here, the witness was under obligations to refund, how could he be interested? The fund was not his, and whether he paid it to the defendant, or held or disbursed it as treasurer, so far as his own interest was involved, it was indifferent to him. If he was bound to refund, it would be confessedly upon the ground that he was not the legal treasurer or trustee of the fund, and that the present plaintiff was such legal treasurer, and so far as the witness' original and joint interest in the fund is involved, it is the same to him, in judgment of law, whether the fund is held or disbursed by him as treasurer or by the present plaintiff as treasurer, for we are bound to believe either would perform his duty with fidelity. I am, therefore, clearly of opinion the witness was not interested, so far as to render him incompetent, on the ground, 1. As to his position as treasurer holding the fund, he was but a naked trustee, and his own interest would be unaffected, whether he retained the fund, or was obliged to repay it; and further, even supposing it to be affected by the repayment, that event was not a direct and necessary consequence of the recovery in this suit, and was too remote and contingent to exclude him; and 2. So far as his joint and fractional interest in the fund was involved in the suit, he was called in favor of it; for the ground upon which the plaintiff claimed the right to recover was as trustee of the fund for the benefit of the proprietors, and there can be no doubt if he recovers he is bound so to hold it. The decision of this question is not very important, as probably every material fact which could have been proved by this witness was subsequently sworn to by others.

The great and important question involved in this case is, whether payment of the note was established on the trial; and this involves the enquiry as to the legality of the appointment of Thomas Carpenter as treasurer of the purchase preparative meeting school fund on the 1st January, 1830.

If he was duly appointed treasurer, the issue under the pleadings was established in favor of the defendant, and the payment made by him was a good defence. The material facts upon which this question must depend, and upon which alone we must determine it, are not contested in the case, though the generality of them leave in a measure some of the leading features of it in a little obscurity. We should have been better satisfied if the case presented a more minute and full account of the origin, purpose, and also the manner of controlling and disposing of the purchase meeting school fund, which at the same time would necessarily have given us, with more particularity, its connection with the purchase preparative meeting of the Friends. We must take the case, however, as we understand it from the testimony.

It was offered to be proved by the defendant on the trial that the portion of the society of Friends denominated *Hicksites*, and who continued the plaintiff as treasurer of the purchase preparative meeting, had abandoned the religious faith of the society with the view of contending that by such abandonment they had forfeited their character as *Friends*, and all the rights and privileges belonging to it. We think the judge was right in rejecting this proof. In a court of law we can look only to the legal rights of the parties to control the fund in question, and they must depend upon the constitution and principles of the association of the Friends and their modes of proceeding, as the purchase preparative meeting confessedly have the exclusive management and direction of the fund. So long as the forms and modes of proceeding by the association under whose direction the original contributors placed the fund are strictly complied with in its management and control, a court of law are incompetent to interfere. If there has been, or is about to be a diversion of the fund from the original purpose and object of it, under the form of legal and constitutional proceedings by the association, or otherwise, it belongs peculiarly to the jurisdiction of a court of equity to interpose and correct or prevent the procedure. Thus, if the object of the original contributors of this fund was the instruction and education of their children in the faith and doctrines of the society of Friends, as understood and believed at the time it was

placed under the direction of one of their associations or meetings, it is quite clear, both on principle and authority, that such object should be strictly observed by those who have the management of it, and that an ample remedy exists against any perversion of the fund. In such case the question is not which faith or doctrine is the soundest or most orthodox ; this is not the object of the enquiry, but for what object or purpose was the fund originally established by the founders of it ? The court proceed to enforce the observance and execution of an ascertained trust, in which rig'.ts of property are concerned, not the peculiar doctrines or faith of either party, though their existence and the nature of them may be incidentally involved in the course of the proceeding. The question arising upon this part of the case is very fully discussed by Lord Eldon, in the case of the *Attorney General* v. *Pearson*, 3 *Meriv. R.* 352, and the principles applicable to it are there clearly stated.

If we look at the constitution and modes of proceeding of the monthly and preparative meetings of the Friends, as detailed by the witnesses on both sides in the case, I cannot entertain a doubt, that *Thomas Carpenter* was legally appointed the successor of the plaintiff, in the office of treasurer of the purchase preparative meeting, on the 1st January, 1830. It is said that the monthly meeting in June, 1828, under which the purchase preparative meeting was held, was not the legitimate one, and that the latter, according to the system of the meetings of the Friends, was therefore, held without authority. The fact is otherwise, if we regard the only account we have of the rules and practice of their proceedings. *H. Griffin* was the *clerk* of that meeting ; this office is the most important one belonging to it ; he decides all questions that arise, after hearing the discussions and opinions of the members, and in the language of the witnesses, according to the " solid sense" of the meeting, as understood by him, without vote, or regard to numbers. This may be a singular mode of proceeding, and of questionable merit, but the fact is undisputed, and we are not to disregard it. This officer also has a right to open and organize the meeting, according to undisputed evidence. He did open the monthly meeting, at the time

and place appointed, according to custom, and under and in pursuance of this authority, was held the purchase preparative meeting, at which T. Carpenter was regularly appointed. It is true, by the turbulence of some of the members he was prevented from taking his seat at the table in the room prepared for the meeting, and was compelled to hold it in an adjacent place ; but this did not deprive him of his office, nor prevent the discharge of his duty, nor the orderly organization of the meeting ; much less did it legalize the tumultuous assemblage which he left, who were without the only officer that, according to their ancient and accustomed proceeding, could organize them, or preside in the transaction of their business. The question is not whether the meeting in the absence of the clerk, or his incompetency to act for any other cause, had not the power to appoint one in his place ; there can be no doubt it would have that power, from necessity, and to preserve it from dissolution. But can the meeting by mere force and caprice drive away this officer, whose term has not expired, in violation of all the forms of their proceedings and principles of their society ? It is said that a majority of the meeting concurred in this act ; and the judge at the circuit supported its legality upon this ground. We cannot assent to this position. In order to maintain it the plaintiff must shew that the monthly meetings of the Friends were governed upon the principle that a majority should control. Even were we to assume, in the absence of any proof on the subject, that this popular principle was applicable to them, we are not at liberty to do so, as the contrary expressly appears. In no instance do the opinions of a majority of the members control their proceedings, according to the long established discipline and usage, but other modes of deciding all questions which arise are universally practised. Besides, even the majority principle was not applied in ejecting the clerk, in this instance. No vote was taken. None of the usages and principles of the meeting were observed. No organization of it had taken place. The act was done by force of a disorderly and promiscuous assemblage of the Friends, against established usage and acknowledged rules of proceeding, and which the members of the meeting cannot justify or legalize. Was the meeting to be broken up

by this proceeding? We think not. This would be virtually giving countenance and effect to acts of tumult and violence over order and law. The clerk and those members of the meeting who desired peaceably to assemble, and transact its business according to established rules and usage, were right in withdrawing and organizing for that purpose. Could there be a doubt of the propriety or legality of this course, if the organization of the meeting at the place appointed had been prevented by an assemblage of persons other than the Friends? And what difference in good sense or in judgment of law can there be, whether the act of force and lawlessness was committed by Friends or strangers? In this respect one had as much right as the other; or to speak more accurately, neither could claim any right or authority thus to act or interfere. But it is said that a majority of the members of the monthly meeting did not attend at the place where the clerk opened the meeting. Neither does it appear that a majority attended at the place where the Friends first assembled; and so far as this objection goes, it is equally applicable to both the meetings; and if sound, neither meeting was legitimate. The true answer, however, to the objection, if applicable at all to meetings of Friends, as they do not decide questions by vote, is, that the appearance of a majority of the members of the monthly meeting is not essential legally to constitute it. The rule of the common law is where a society or corporation are composed of an indefinite number of persons, a majority of those who appear at a regular meeting of the same, constitute a body competent to transact business. *Cowp.* 248. *Rex* v. *Mayor of Portsmouth,* 4 *T. R.* 822, 3. *Rex* v. *Bellinger,* 7 *Cowen,* 409, 10; *Ex parte Wilcox, note* 1. There is nothing in the case to shew that any particular or specified number of the Friends are necessary to constitute a regular monthly meeting, and the rule of the common law therefore applies.

I have not deemed it important to examine at large the objection to the recovery, on the ground that the defendant is a *partner* in the fund, and that no *suit at law* can be sustained against him, and that as the purchase preparative meeting is not a corporate body, the suit should be in the *names of all the parties* interested. I consider this objection wholly unfounded.

Though the defendant has a right to participate in the benefits derived from the use of the fund, he has no right or claim to the control of it except according to the usage and custom of the purchase preparative meeting of the Friends, under whom the fund was placed. It is this meeting that has, by the consent of the owners of the fund, of which the defendant is one, the exclusive management of it. They have placed it in the hands of their treasurer, who has the immediate control of it. He loaned it to the defendant, who engaged, under hand and seal, to pay it to the then treasurer or his successor in office. So far as the rights of the parties are concerned upon the evidence in this case, in connection with the fund, the defendant is to be viewed in the light of a stranger to it. He has no right to possess himself of it, or control it, any more than a stranger, and cannot in this respect be deemed a partner. This view is also applicable to every other individual member of the purchase preparative meeting.

New trial granted, costs to abide the event.