JENNIE M. OSTROM, as President of the SULLIVAN COUNTY LADIES' SOLDIERS AND SAILORS' MONUMENT ASSOCIATION, Respondent, *v.* JENNIE L. GREENE, as Executrix of MARY C. WRIGHT, Deceased, Appellant.

1. APPEAL — REVIEW OF FACTS WHERE THERE IS DISSENT BELOW. The rule that the Court of Appeals cannot review questions of fact does not apply where an affirmance by the Appellate Division is not unanimous and there is a question whether there is any evidence in the case to support a finding of fact, as such conditions raise a question of law which the Court of Appeals may decide.

2. VOLUNTARY ASSOCIATIONS — REGULARITY OF PROCEEDINGS. A voluntary unincorporated association of seven or more persons is not a joint stock company nor a corporation nor a copartnership, but, where it has neither articles, constitution or rules, the regularity of its legislative proceedings may properly be tested by the law of corporations and that of copartnerships, so far as the same are applicable, and also by the ordinary parliamentary rules of deliberative assemblies.

3. ADJOURNMENT OF MEETINGS OF VOLUNTARY ASSOCIATIONS. Adjournment of meetings of a voluntary unincorporated association may be made from time to time, in the absence of rules, according to the usual method of parliamentary bodies, and business may be transacted at an adjourned meeting, without notice to the absentees.

4. POWER OF MINORITY TO ADJOURN MEETING. A minority of an unincorporated voluntary association may adjourn from time to time, even if a majority of all the members is necessary to constitute a quorum in order lawfully to transact business.

5. REMOVAL OF OFFICERS OF VOLUNTARY ASSOCIATIONS. A voluntary unincorporated association, without articles, constitution or rules, may make changes, including the removal, without notice, of its president or other officer at will, at any meeting duly held, except that it cannot expel a member without notice.

6. ACTION BY PRESIDENT OF VOLUNTARY ASSOCIATIONS. The president of a voluntary unincorporated association duly authorized thereto by the association may, under section 1919 of the Code of Civil Precedure, bring an action to recover the property belonging to all the members the same as "all the associates" could have brought it "by reason of their ownership or interest therein."

7. APPEAL — ASSUMING FACTS. The Court of Appeals cannot find facts in order to reverse a judgment, although it may assume the existence of any needed fact warranted by the evidence in order to affirm the judgment.

45

8. ACTION TO RECOVER FUND OF VOLUNTARY ASSOCIATIONS — DEFENSE. *It seems*, it is no defense to an action by the president of a voluntary unincorporated association to recover a fund from its former officers, that it has been applied by a minority to the general purpose for which the association was organized, since the majority is entitled to control.

*Ostrom* v. *Green*, 30 App. Div. 621, affirmed.

(Argued November 24, 1899; decided January 9, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered May 23, 1898, affirming a judgment in favor of plaintiff entered upon a decision of the court after a trial without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Lewis E. Carr* for appellant. The complaint should have been dismissed because the plaintiff was not at the time the action was commenced, or at any time afterwards, the legally elected president of the association through whose efforts the fund in question had been raised ; the association she claimed to represent had, at the time of the commencement of the action, no legal right to the fund in question ; and the action was one which could not be so brought. (Code Civ. Pro. § 1919; *Dennis* v. *Kennedy*, 19 Barb. 517 ; *Wells* v. *Gates*, 18 Barb. 554 ; *Corning* v. *Greene*, 23 Barb. 33 ; *McMahon* v. *Rauhr*, 47 N. Y. 67 ; *Belanger* v. *Dana*, 52 Hun, 39 ; *Horton* v. *Parsons*, 37 Hun, 42 ; *People ex rel.* v. *Nostrand*, 46 N. Y. 375 ; *Stremple* v. *Rubing*, 21 N. Y. S. R. 483 ; *Wachtel* v. *N. W., etc., Society*, 84 N. Y. 28.) If it be held the action was one which might be brought in the name of the president or treasurer, it was not maintainable because the court had no power or jurisdiction to grant the relief demanded. The self-imposed trust of the association had been discharged, and the fund it was concerned in raising had been applied to the use for which it was raise l, and the power of the court to deal with it terminated before the trial of the action. (*Osborn* v. *Schenck*, 83 N. Y. 201 ; *McKay* v. *Jarvis*, 8 Wkly. Dig. 155 ; *Barnes* v. *Quigley*, 59 N. Y. 265 ; *Bell* v. *Merrifield*, 109

N. Y. 202; *Peck* v. *Goodberlett,* 109 N. Y. 180; *Hull* v. *Ely,* 4 Abb. [N. C.] 440; *Matter of N. Y., W. S. & B. R. R. Co.,* 35 Hun, 575; *Kenney* v. *Apgar,* 93 N. Y. 539; *Bennett* v. *Whitney,* 94 N. Y. 302.) The judgment appealed from should be reversed because the attempt is plainly to divert the trust fund from the object for which it was raised, and apply it to a different one. (*McGlynn* v. *Post,* 21 Abb. [N. C.] 67; *Penfield* v. *Skinner,* 11 Vt. 296; *Ellison* v. *Bignold,* 2 J. & W. 511.)

*T. F. Bush* for respondent. The findings of facts made and filed by the trial court having been unqualifiedly affirmed on the appeal to the Appellate Division, are conclusive on this appeal, unless it shall appear that a finding of fact to which exception was taken was wholly unsupported by evidence. (*Cox* v. *Stokes,* 156 N. Y. 491; *Crim* v. *Starkweather,* 136 N. Y. 635; *White* v. *Benjamin,* 150 N. Y. 258; *Fairchild* v. *Edson,* 154 N. Y. 199; *Szuchy* v. *H. C. & I. Co.,* 150 N. Y. 219; *Furner* v. *Seabury,* 135 N. Y. 50.) The appellant's exception to the second finding, that "the plaintiff Jennie M. Ostrom is, and was at the time of the commencement of this action and for some time prior thereto, the president of the association," is groundless. (*Ogden* v. *Alexander,* 140 N. Y. 356; *F. N. Bank* v. *Chalmers,* 144 N. Y. 436; *Groves* v. *Rice,* 148 N. Y. 232; *Amherst College* v. *Ritch,* 151 N. Y. 282; *Newman* v. *Frost,* 52 N. Y. 422; *Marvin* v. *B. I. M. Co.,* 55 N. Y. 547.) The plaintiff's title cannot be questioned upon any known principle. (*Lafond* v. *Deems,* 81 N. Y. 514; Beach on Priv. Corp. §§ 90, 93, 120, 296; Niblack on Voluntary Soc. §§ 129, 138; *Smith* v. *Law,* 21 N. Y. 296; *Ex parte Willcocks,* 7 Cow. 402; *Field* v. *Field,* 9 Wend. 403; Morawetz on Priv. Corp. § 476; *M. A. Church* v. *O. S. Church,* 5 Robt. 649; *Brendon* v. *Worley,* 8 Misc. Rep. 253; *Strumpel* v. *Rubing,* 21 N. Y. S. R. 483; *P. Assn.* v. *McGrath,* 23 N. Y. S. R. 209.) The exceptions to the findings of facts that the treasurer, Roosa, delivered the funds and records to the defendant's testatrix, Mrs. Wright, without consent or authority from the

association, and that the defendant Wright unlawfully and wrongfully took and withheld the same, are without foundation. (*Farrell* v. *Cook*, 5 N. Y. Supp. 727.) The treasurer could not tender her resignation to the unauthorized meeting held on January twenty-fourth. (Niblack on Voluntary Soc. § 151; Angell & Ames on Corp. § 433.) The plaintiff was the president of the association, and the action was properly brought in her name and in her official capacity. (Code Civ. Pro. § 1919.) The appellant's contention that her testatrix, through an expenditure of the funds more than two years after this action was commenced, fully executed the trust vested in the association and thus relieved herself from liability for it, is fallacious and utterly groundless. (*Burnap* v. *Nat. Bank*, 96 N. Y. 125, 131; *Thomson* v. *Bank of B. N. A.*, 82 N. Y. 1; *Kaplan* v. *N. Y. B. Co.*, 151 N. Y. 171; *Rosenstein* v. *Fox*, 150 N. Y. 354; *Koehler* v. *Hughes*, 148 N. Y. 507; *White* v. *Benjamin*, 150 N. Y. 258; *Crim* v. *Starkweather*, 136 N. Y. 635; *Stilwell* v. *M. L. Ins. Co.*, 72 N. Y. 385; *Hall* v. *U. S. R. Co.*, 30 Hun, 375; *Douglass* v. *Ferris*, 138 N. Y. 192.)

VANN, J. The plaintiff, as president of an unincorporated association consisting of more than seven members, brought this action against Caroline Roosa and Mary C. Wright for an accounting and to recover the funds, books and papers belonging to the society. The answers of the defendants, among other denials, put at issue the allegation that the plaintiff was president of the association, but no affirmative or equitable defense was pleaded. The trial court found that the plaintiff, at the time of the commencement of the action, and for some time prior thereto, was president of said association; that Mrs. Roosa, as treasurer, on the 24th of January, 1893, had in her hands money of the association amounting to the sum of $776.66, as well as its books and papers, and on that day, without lawful consent or authority, delivered the same to Mrs. Wright and absolutely parted with the custody and control thereof; that Mrs. Wright, without lawful authority, took the same into her possession and wrongfully withheld the same from the asso-

ciation. He found, as a conclusion of law, that the action was properly brought in the name of the plaintiff, as president, and that, as such, she was entitled to recover from Mrs. Jennie L. Greene, as the executrix of Mrs. Wright, who died after the trial, but before the decision, said sum of money and the possession of said books and papers. The complaint was, by consent, dismissed without costs as to the defendant, Mrs. Roosa. The judgment entered in favor of the plaintiff was, upon appeal, affirmed by the Appellate Division, one of the justices dissenting.

The findings were excepted to, but under the rules governing appeals to this court, those relating to the facts of the case are conclusive, unless it appears that they were made without evidence to support them. (*Cox* v. *Stokes*, 156 N. Y. 491.) According to our judicial system the trial courts and the Appellate Divisions finally pass upon all questions of fact, and the power of the Court of Appeals is limited by the Constitution " to the review of questions of law." Whether there was any evidence to support a fact found is a question of law, which, when the affirmance by the Appellate Division is not unanimous, we can review, but in no other way can we deal with a question of fact in a civil case, even if we think it has been improperly decided.

The main question presented for decision is whether there was evidence to support the finding that the plaintiff was president of the association when this action was commenced.

The association was not organized to make money for its members, but for a patriotic purpose. It had no articles of association, constitution, by-laws or rules of procedure. It made no provision for stated meetings or for calling special meetings. It was organized on the 14th of September, 1892, under the name of the " Ladies' Sullivan County Soldiers' Monument Association," by seven women who met at the house of one of their number and elected Mrs. Niven president, Mrs. Bush as one of several vice-presidents, and Mrs. Roosa secretary and treasurer. The object of the association, as stated in the minutes of the secretary, was " to raise money

for the erection of a soldiers' monument." The membership fee was fixed at one dollar, and all ladies in the county of Sullivan were invited to become members. Various methods of raising money were discussed at the first meeting, some of which were subsequently resorted to, and among others a subscription paper was circulated whereby the subscribers promised "to pay the sum set opposite their respective names, for the purpose of creating a fund to be devoted to the erection of a soldiers' monument in the village green at Monticello, N. Y." · The association regularly adjourned, from time to time, to a fixed place, day and hour for fourteen or fifteen times, until the 3d of January, 1893, when the membership had increased to seventy-eight and the fund in question had been raised and was in the hands of the treasurer. · All meetings after the first were adjourned meetings, held regularly once a week in continuance of the one at which the association was organized. Notice of each adjournment and of the next meeting was published in the two village newspapers, but no other method was taken of notifying absentees when the next adjourned meeting would be held. It was customary at each meeting to transact business by the vote of a majority of those present, whether they constituted a majority of the entire membership or not.

Up to the 3d of January, 1893, all was harmonious, but unfortunate differences of opinion then arose. One of the thirty-five members present at a regularly adjourned meeting held that day, made a motion that the members "now present proceed to organize an incorporated association,   *   *   *   to accomplish the object of this association." The president read a statement in opposition to the project and refused to put the motion, declaring that it was out of order. There was some confusion, and although no appeal from the decision of the chair was taken, it was insisted by many that the motion should be put by one of the vice-presidents. While Mrs. Niven refused to put the motion herself, with great fairness she offered the chair and in effect turned the business over to Mrs. Bush, one of the vice-presidents, who put the motion,

which was carried by a vote of twenty-seven to seven. A motion to adjourn having been made and lost, the seven members who had voted against the resolution, including Mrs. Niven, the president, and Mrs. Roosa, the secretary and treasurer, left the meeting and never returned. Those who remained appointed a president and secretary *pro tempore*, transacted some business and adjourned as a voluntary association until the 17th of January. Steps were taken to incorporate, with the view of turning over the funds of the association to the incorporation, but owing to a mistake in the papers no incorporation was then effected and the project does not appear to have again been acted upon at any meeting of the association. A corporation was subsequently formed, but no effective transfer was made to it, and it never accepted, nor attempted to accept, any alleged transfer.

On the 17th of January about thirty members attended the meeting, one of the vice-presidents called to order, and a president and secretary *pro tempore* were chosen. A resolution was adopted, separating the office of secretary and treasurer, and directing that Mrs. Roosa continue to hold the office of treasurer. Mrs. Thornton was then elected secretary in the place of Mrs. Roosa, who was directed to pass over to her successor as secretary all records and papers belonging to the association, and due notice of this action was promptly given to her. The meeting adjourned until the 31st of January, when thirty-one members were present, and a president *pro tempore* was again chosen. A resolution was adopted unanimously removing Mrs. Niven from the office of president and Mrs. Roosa from the office of treasurer, no personal notice to either having been given. It was also resolved that the duties of president be performed by a vice-president until a permanent president should be elected, and that the secretary cause notice to be published in two newspapers printed in Monticello that at the next meeting, naming the time and place, an election of president and treasurer would be held to fill the vacancies existing by the removal of Mrs. Niven and Mrs. Roosa. The name of the association was changed by resolution to the " Sullivan

County Ladies' Soldiers' & Sailors' Monument Association."
The meeting was adjourned to February 7th, when fifty-four
members were present out of seventy-eight in all, formal notice
thereof signed by the secretary having been published as
directed.  One of the vice-presidents presided, and the asso-
ciation proceeded to the election of a president and a treas-
urer, which resulted in fifty-two ballots being cast for Mrs.
Ostrom as president, and fifty-two for Mrs. Decker as treas-
urer, and they were thereupon declared duly elected.  Mrs.
Decker was directed to make a personal demand of Mrs.
Roosa for the immediate possession of all books, papers and
moneys pertaining to the office of secretary and treasurer, and
she duly complied with the resolution, but without effect.

The president was authorized " to take such measures and
proceedings in behalf of the association as may be necessary
to recover all books, papers and moneys belonging to " it.
The meeting adjourned to February 21st, and this action was
commenced on February 18th.

Mrs. Niven and those who withdrew with her, including
some others who subsequently joined them, held meetings and
assumed to do business in the name of the association, claim-
ing that they were the original society.  They adopted and
published a resolution stating that they did not recognize those
who did not act with them as " the association organized Sep-
tember fourteenth."  Notice of these meetings was given only
to the minority, thus acting by themselves.  After the com-
mencement of this action, Mrs. Wright, by direction of these
ladies, thus acting separate and apart from the majority of the
members of the association, paid the money in question, which
she had received from Mrs. Roosa, toward the erection of a
monument on the village green in Monticello.

We thus reach the controlling question whether the trial
court could properly draw the inference from these facts that
Mrs. Ostrom was president of the association when this action
was commenced.

Corporations, copartnerships, joint stock associations and
voluntary associations are organizations of human beings for

convenience in transacting business, whether the object be to make money or to do charitable or philanthropic work. They all have some points in common, but in some respects each differs from all the others. The points of resemblance sometimes lead to confusion in determining the rights, powers and liabilities of the organization under consideration at the time the question arises. The plaintiff's association was neither a corporation nor a copartnership, and while it resembled both in some respects, it differed materially from either. It had none of the statutory rights of a corporation unless the right to sue and be sued in the name of its president may be of a corporate nature. (Code Civ. Pro. § 1919.) It had no charter from the state giving it certain powers and subjecting it to certain limitations and liabilities. It had no right to use a common seal, no power of perpetual succession or of contracting under a corporate name. It was not an artificial person and had no distinct existence independent of its members. It was not a collective whole, which, as such, could hold property or dispose of it.

Neither did its members possess the powers or share the responsibilities of copartners in all respects, for one was not presumed to be the agent of all, the death of one did not dissolve the association and no member was liable to a creditor unless in some way he assented to the contract creating the liability. (*Lafond* v. *Deems*, 81 N. Y. 507, 514; *In the Matter of the St. James's Club*, 2 De Gex, M. & G. 383; *Flemyng* v. *Hector*, 2 M. & W. 172.) It was not a joint stock company, which is simply an elaborate copartnership to some extent regulated, or, at least, recognized, by statute, because it could issue no stock, was not organized to make money in order to divide it among its members and the right to membership was not transferable. (L. 1894, ch. 235; Const. of N. Y. art. 8, § 3.)

While it was neither a corporation nor copartnership, in order to pass upon its rights and powers, as well as those of its members, "both the law of corporations and the law of copartnerships are to be resorted to in the absence of statutory

regulations, the choice being determined by the nature of the feature under consideration." (*Carter* v. *Producers' Oil Co.*, 38 Atl. Rep. 571.) Common parliamentary rules, in use by all deliberative assemblies in this country, may also be resorted to, in the absence of any made by the association itself, in considering the regularity of its proceedings.

There is a marked difference between a voluntary association with rules and one without. If lawful rules are made for the government of the members they must be conformed to until they are regularly changed. So long as they are in force they are the law of the association and must be obeyed. An association, however, without articles, constitution or rules can make changes at will at any meeting duly held, except that it cannot expel a member without notice, because there is a mutual promise on the part of the members, implied from the fact of organization, that each is to remain a member until he resigns, is removed for cause or ceases to be a member in accordance with some regulation. The association, in the absence of rules, can adjourn its meetings from time to time according to the usual method of parliamentary bodies, and transact business at an adjourned meeting without notice to the absentees. (*Smith* v. *Law*, 21 N. Y. 296.) It has the right to elect such officers as it chooses and to change them as often as it chooses. It can elect a president at each meeting, and in so doing would, by implication, remove the preceding president.

Mrs. Niven had no lasting title to the office of president, and could hold it only during the pleasure of the association. There was no tenure to the office, and she had no right to continue as president for any definite period, but was subject to removal at any time when the association decided to make a change. There is a distinction between the removal of an officer and the expulsion of a member. A member cannot be expelled without notice, on account of the agreement to be implied from the organization itself, but an officer, unless protected by rule, can fill the office so long only as the association desires. While a member's tenure is permanent, the tenure

of an officer, under such circumstances, is temporary.   Membership is an individual right and is not subject to the will of the majority of the association unless the member has been guilty of misconduct.   The holding of an office unprotected by rules is not an individual right, but is subject to change at the pleasure of the association.   Mrs. Niven was entitled to no notice or opportunity to be heard, and the cases cited by the defendant's counsel, holding that a person cannot be expelled from membership without notice, are not applicable to this case.   If she was entitled to hold on after the association had decided to remove her and had elected a successor, for how long a time could she continue?   When would her right cease?   What was the length of her term?   These questions answer themselves, for, as there was no regulation upon the subject, it is obvious that she could only act as president until the association removed her or elected a successor.   Whether her action on the third of January and subsequently could be treated as a withdrawal from membership, or as an abdication or resignation of her office as president, is unimportant, for the association had control of the subject and could elect a new president without notice to her, either with or without formally removing her.

All of the adjourned meetings were regular, as every meeting from the first was duly adjourned to a specified time and place.   Personal notice to every member was unnecessary, for it was the same in effect as if the association had sat in continuous session and had adjourned each day to the next, although, in fact, notice was given through the local newspapers.   Even if a majority of all the members was necessary to constitute a quorum in order to lawfully transact business, which, in a society composed of an indefinite number of persons, is open to question, a minority could adjourn from time to time, and hence each meeting was regularly held.   (*Field v. Field*, 9 Wend. 403 ; Spelling on Private Corporations, § 374.)   When the plaintiff was elected president, more than two-thirds of all the members were in attendance at a lawful meeting, and we think that her election was in all respects

regular and valid. The decision of the association upon the subject is final, and she, therefore, had the right, after being duly authorized by the association, to bring an action to recover the property belonging to all the members the same as " all the associates " could have brought it " by reason of their interest or ownership therein." (Code Civ. Pro. § 1919.) The association represented by the plaintiff is the one that adjourned from time to time from the date of its organization until the 7th of February, when she was elected, and not the organization separately carried on by Mrs. Niven and those who acted with her. When they withdrew they did not carry the association with them, because a large majority of those in attendance on that day remained and duly adjourned to a subsequent date.

The argument that the self-imposed trust of the association was discharged by the application of the money toward the erection of a soldiers' monument, and that, hence, the plaintiff was not entitled to recover the fund, is untenable upon the record as it now appears. No such defense was pleaded, no facts were found to support such a defense and we cannot find facts ourselves in order to reverse a judgment, although we may assume the existence of any needed fact, warranted by the evidence, in order to affirm a judgment. (*Ogden* v. *Alexander*, 140 N. Y. 356, 362.)

But we are of the opinion that the facts would not in any event constitute a defense, because the association had the right by the vote of a majority of its members to expend the money in question for a monument; to decide at what place it was to be erected, subject to the control of the public authorities; to determine upon the style, size and ornamentation of the monument, the inscription to be placed thereon and the various matters connected with the discharge of the trust. The seven who virtually withdrew from the association could not discharge the trust, for if a minority of seven could, a minority of one could. One member out of seventy-eight, having in her hands the fund belonging to the whole number as an association, in trust, could not discharge the trust by

expending the money as she thought best in the purchase and erection of a monument. That would clothe the treasurer with a power which does not belong to that position. Every member of a voluntary association would hesitate about contributing money for a charitable or patriotic purpose if he did not feel that he had the right, whether he exercised it or not, to have something to say about how that money should be expended. The association created the trust and the association alone can discharge it. A majority is entitled to control, and the minority, however hard it may be, must submit.

We find no error in the record that calls for a reversal of the judgment appealed from, which should, therefore, be affirmed, but as in an equity case the costs are subject to our discretion, we award none to either party on this appeal.

All concur, except PARKER, Ch. J., not voting, and MARTIN, J., dissenting.

Judgment affirmed.