This action was brought to restrain the defendant from constructing and operating an alleged proposed extension of its street surface railroad between the village *Page 78 
of Skaneateles and the city of Syracuse, in the county of Onondaga. The complaint was framed upon the theories: (1) That the alleged extension was invalid because the defendant had failed to obtain from the board of railroad commissioners a certificate that public convenience and necessity required it, and (2) that the so-called extension was such only in name and was in reality a new road, the construction and operation of which was illegal without such certificate. These allegations of the complaint were met by the denials of the answer, and upon the issue thus joined and the proofs made, the defendant was given a judgment, which has been affirmed by the Appellate Division.
The appellant now contends that the findings of fact and conclusions of law of the learned trial court do not support the judgment, because the allegations of the complaint and the evidence given in support thereof tend to prove the construction and operation of a proposed extension between Skaneateles and Syracuse, while the only findings and conclusions upon the subject are to the effect that a bona fide extension was projected and made between Skaneateles and Marcellus. Of this contention it is enough to say that there is evidence to support the findings and conclusions made, and these are sufficient to sustain the judgment rendered, unless the main contention of the plaintiff as to the construction of sections 59 and 90 of the Railroad Law is upheld, in which event the judgment must, of course, be reversed without regard to the evidence or the findings of fact based upon it.
The failure of the trial court to find certain facts which the appellant claims to have established by evidence is not, in the present state of this record, an error of law reviewable by this court (National Harrow Co. v. Bement Sons, 163 N.Y. 505); and if there is any evidence to support the findings of fact actually made, the result in that regard is binding upon this court, even though a different conclusion should or might have been reached in the courts below. (Ostrom v. Greene, 161 N.Y. 363. )
In the last analysis, therefore the only question that we can *Page 79 
review is whether the extension of defendant's road, projected and constructed as found by the trial court, was valid under the statute, without the certificate of the board of railroad commissioners as to the public convenience and necessity thereof.
The defendant was organized in 1895 for the purpose of constructing an electric street surface railroad over certain routes described in its charter. One of these routes extended from a given point in the city of Auburn in the county of Cayuga, over and along stated courses to the intersection of Genesee street with the easterly boundary of the village of Skaneateles in the county of Onondaga. The defendant had complied with the then existing requirements of section 59 of the Railroad Law which, among other things, provided that "no railroad corporation hereafter formed shall exercise the powers conferred by law upon such corporations or begin the construction of its road * * * until the Board of Railroad Commissioners shall certify that * * * public convenience and a necessity require the construction of said railroad as proposed in said articles of association." The route above referred to was one of the routes specified in the defendant's articles of association. At the time of the commencement of this action the defendant had constructed and was operating about six and one-half miles of its road over that route, from the point of its beginning in the city of Auburn to a point in Genesee street at or near its intersection with Jordan street in the village of Skaneateles, and was about to begin the construction of the remainder of its road along Genesee street from its intersection with Jordan street to the easterly boundary of the village of Skaneateles. After the completion of its road along this route and on the 2d day of October, 1901, the defendant made and filed a statement and certificate of a proposed extension of its road from its easterly terminus in the village of Skaneateles, easterly along specified courses for a distance of about six miles to the village of Marcellus in the county of Onondaga. This statement and certificate complied in all *Page 80 
essential particulars with section 90 of the Railroad Law which provides that "Any street surface railroad corporation, at any time proposing to extend its road or to construct branches thereof, may, from time to time, make and file in each of the offices in which its certificate of incorporation is filed, a statement of the names and description of the streets, roads, avenues, highways, and private property in or upon which it is proposed to construct, maintain or operate such extensions or branches. Upon filing any such statement and upon complying with the conditions set forth in section 91 of the Railroad Law, (which relates to the consents of the local authorities and adjoining property owners in cities and villages), every such corporation shall have the power and privilege to construct, extend, operate and maintain such road, extensions or branches, upon and along the streets, avenues, roads, highways and private property named and described in its certificate of incorporation or in such statement."
The courts below have held that section 59 of the Railroad Law as it stood in 1901 had no application to proposed extensions of then existing street surface railroads, and that it was not necessary for the defendant to apply to the board of railroad commissioners for a certificate of public convenience and necessity for the extension of its road above referred to. We concur in that construction of the statute. The history and the language of section 59 very clearly indicate the legislative purpose behind its enactment. When it first became a part of the Railroad Law in 1892 street surface railroads were expressly exempted from its provisions. Thus it stood until 1895, when that exemption was removed. In plain and unequivocal language it referred only to new railroads to be constructed by railroad corporations thereafter to be formed. In 1902 it was amended (Sec. 59a) by providing that "any street surface railroad company which proposes to extend its road beyond the limits of any city or incorporated village by a route which will be practically parallel with a street surface railroad already constructed and in operation shall first obtain the certificate of the Board of Railroad Commissioners that *Page 81 
public convenience and a necessity require the construction of such extension as provided in the case of a railroad corporation newly formed."
During the whole of the period from 1890, when the present Railroad Law was originally enacted, down to 1902, when section 59 was so amended as to bring proposed extensions of street surface railroads within the rule requiring the certificate of the board of railroad commissioners as to public convenience and necessity, section 90 has also been a part of the same law, and, although amended in 1893 and again in 1895, its substance has remained unchanged and it has always dealt exclusively with extensions and branches of street surface railroads. Thus we see that in 1890, when newly projected street surface railroads were concededly exempted from the changed policy of the state towards its steam railroads, as manifested in section 59 of the Railroad Law, the statutory provision (Sec. 90) for extensions of street surface railroads was in effect the same as in 1895 when new street surface railroads were placed upon the same footing as new steam railroads, and this was the condition of the statute down to 1902 when section 59 was amended as above stated.
The reasons for this difference in the earlier legislative treatment of the two kinds of railroads are obvious. Under the law as it stood prior to 1890 the requisite number of persons with sufficient capital could organize a railroad corporation and construct a railroad at any time and over any route they might choose. In the formative period of our state this was doubtless a most beneficent policy and contributed very materially to the development of our commerce and resources. Experience, however, demonstrated that railroad enterprises are not exceptions to the ordinary trade laws of supply and demand. Ill-advised and speculative railroad enterprises soon emphasized the necessity of protecting, not only existing railroad corporations against destructive competition, but the investing public against the disastrous consequences of indiscriminate and unrestricted railroad schemes backed by alluring but impracticable promise of gain. These were the conditions *Page 82 
which brought about the enactment of section 59 as part of the Railroad Law. The reasons for then exempting street surface railroads from its operations are equally apparent. At that time street surface railroads were operated by horse power, chiefly in the larger cities, and they were comparatively few in number. With the advent of electricity as a motive power new conditions were created. Not only was urban traffic greatly augmented, but interurban street surface railroads were projected on every hand, until the history of steam railroads found its counterpart in this new outlet for corporate enterprise and capital. In 1895 the legislature again interposed, this time in favor of existing street surface railroads and the investing public, by striking out of section 59 the exemption in favor of street surface railroads, thus placing all railroads of every kind thereafter to be projected upon precisely the same footing. That this amendment of section 59 was not quite far reaching enough has been made evident by later developments and legislation. After the legislation of 1895, section 90 of the Railroad Law still gave practically unlimited power to extend existing street surface railroads. Under this power long interurban lines could be constructed by means of successive extensions, and existing lines could be paralleled by the same methods. To remedy this new phase of an old evil, section 59a was enacted in 1902 and, as the law now stands, no street surface railroad corporation can extend its road beyond the limits of any incorporated city or village, if the effect of such extension will be to practically parallel any existing street surface railroad, without first obtaining from the board of railroad commissioners a certificate that public convenience and a necessity require such extension.
The construction of sections 59 and 90 of the Railroad Law, supported by their language and history, is reinforced by several incidental considerations. While it is true that these sections must be read together, it is equally true that such a reading is useful only so far as the two sections relate to precisely the same subject. Originally section 59 had reference only *Page 83 
to steam railroads, and section 90 has always dealt exclusively with street surface railroads. The Railroad Law has never permitted the extensions of steam railroads, while it has always provided for extensions of street surface railroads. The same legislative policy which in 1890 applied the provisions of original section 59 to steam railroads, excluded street surface railroads from its operation and, as that section related only to newly projected railroads, it is clear that the mere excision in 1895 of the exemption in favor of street surface railroads had no other effect than to place the latter upon exactly the same footing with the former. Sections 59 and 90 were, therefore, entirely independent of each other until 1902, when the legislature again announced a change of policy, not as to railroads generally, but only as to extensions of street surface railroads as expressed in section 59a, which for the first time brought sections 59 and 90 into relations with each other. All this is supplemented by the practical construction that has been given to these sections by the board of railroad commissioners and by the legislature. The former, in its annual reports of 1897, 1898 and 1899, very pointedly called attention to the need of amendatory legislation in respect of street surface railroad extensions; and the latter, in 1902, adopted the recommendations therein made by the enactment of section 59a. Much might be said as to the far-reaching effect of this practical construction and the legal weight which should be given to it, but since it is in perfect accord with our own view of the statute we deem it unnecessary to further extend the discussion.
The judgment should be affirmed, with costs.
PARKER, Ch. J., O'BRIEN, MARTIN and VANN, JJ., concur; GRAY, J., not sitting; BARTLETT, J., taking no part.
Judgment affirmed. *Page 84