WALTER J. WOLF and Others, as Trustees under the Last Will and Testament of SAMUEL W. PECK, Deceased, Petitioners, *v.* THOMAS FOLEY, as President of the International Union of Operating Engineers, Local 125, Defendant.

Municipal Court of New York, Borough of Manhattan, Ninth District, August 29, 1936.

*Wolf & Kohn* [*Joseph Krefetz* of counsel], for the petitioners.

*Charles K. Finch,* for the tenants.

WINTER, J.   This proceeding is brought by the landlords to dispossess the tenants herein from the premises at 6 West Twenty-ninth street in the borough of Manhattan, city of New York, for non-payment of rent for the months of May and June, 1936.

The tenants herein are a voluntary unincorporated association, organized, not for the profit of the individual members, but to improve their wages and working conditions.   Although the record is somewhat scanty on the point, it may be assumed that the tenant association has adopted a constitution and by-laws and that the membership functions as an association under these.   Of its 650 members, not over forty per cent ever attend meetings.   It also may be assumed that the deliberations of these meetings are controlled by a majority of the votes of the attendance.

In the instant proceedings the individual members are not named as tenants and sued as such, but their president is sued as the representative of these members.

In May, 1934, the tenant association by its then officers, Samuel Robinson and one Irwin, entered into a written lease of the premises in suit with these landlords. That lease expired on April 30, 1935, when it was renewed by the same officers for another year expiring April 30, 1936. The union occupied the premises as a meeting hall and executive offices until in January, 1936, a factional row occurred among the members which resulted in the suspension of Robinson and Irwin as officers and the election of Mr. Foley and others in their place. Suit was then filed by the new officers in the Supreme Court of this State against the displaced officers. This sought an injunction against interference and a turnover of the property and papers of the association and the usual relief appropriate to these situations. Apparently a preliminary order *pendente lite* was obtained, the scope of which was not indicated to this court nor the date. That suit went to final hearing on May 4, 1936, and was not finally determined until May 27, 1936, when a final decision granting a permanent injunction was filed. In the meantime the lease of the premises had expired by its terms.

In March, 1936, after the ouster of the old officers and apparently about the time of the preliminary injunction, a resolution was passed at a meeting of the membership to vacate the leased premises at the end of its term and move to other quarters. Thereupon defendant Foley and his majority faction broke the lock of the premises and removed the greater part of the furniture to other premises, leaving, however, a large safe and some broken chairs. The safe seems not to have belonged to the union, but was there when they originally occupied the place. The old officers, Robinson and Irwin, with their rump faction remained behind in the leased premises with the safe and the remnants of the furniture, while the majority faction thereafter occupied the new quarters as their meeting hall and executive offices. At the time of the filing of this petition to dispossess, the rump faction was in possession of the leased premises.

On conflicting testimony I have found that the tenants did not notify the landlords of their intention to vacate the premises. Both seemed to me to have awaited the outcome of the injunction suit for an assertion of their respective rights. I do not think, however, that this is decisive of the matter. Rather it seems to me that, if the association moved out of the premises and completely abandoned them prior to April 30, 1936, then the lack of notice was immaterial.

The landlords claim that the union did not surrender the premises before that date because of the occupancy thereof by the insurgent faction with the remnants of the furniture. The union, on the

other hand, claims that they vacated the premises as a body, and that what was left was an irresponsible faction over which they had no control and for whose acts they were not liable.

It perhaps is true that this association is not a partnership and that its members are not presumed to be agents of all its members. (*Ostrom* v. *Greene*, 161 N. Y. 353; *Lafond* v. *Deems*, 81 id. 507, 514; *Matter of St. James's Club*, 2 De Gex, M. & G. 383; *McMahon* v. *Rauhr*, 47 N. Y. 67.) The minority are bound by the majority. The acts of the majority are those only of the association. Nor are the individual members liable for the debts of the association, which they neither authorized nor ratified, and to which they did not pledge their individual credit. (*McCabe* v. *Goodfellow*, 133 N. Y. 39.) Also the association can only be sued where there is a joint interest in the subject-matter and a joint liability on the part of all the members. (*Corning* v. *Greene*, 23 Barb. 33; affd., 26 N. Y. 472, note; *McCabe* v. *Goodfellow*, 133 id. 89.) On these authorities it would seem, therefore, that, if the association's liability for the holdover were predicated on the agency of the minority faction, then this proceeding would not lie.

However, the tenants' liability under the lease in suit is to deliver over the premises to the landlords at the end of the term broom clean. Concededly they were as a body bound by the written lease under which they were enjoying the landlords' premises. All the members had a joint interest in this. Also they had a reciprocal duty to observe its obligations, including the duty of all the members to surrender the premises at the end of the term. For their failure to do so, the law implies an agreement in the lease at the election of the landlords for a continued tenancy or holdover for another year, upon the terms of the original lease. (*Schuyler* v. *Smith*, 51 N. Y. 309; *Haynes* v. *Aldrich*, 133 id. 287; *Kennedy* v. *City of New York*, 196 id. 19.) This implication remains even where the tenants hold over involuntarily, not for their own convenience. (*Haynes* v. *Aldrich, supra; Herter* v. *Mullen*, 159 N. Y. 28.) It is in the nature of a penalty inflicted upon the tenants, the signatory of the lease, for not observing the obligations they and all of them assumed when they originally took the lease. (*Stern & Co.* v. *Avedon & Co., Inc.*, 111 Misc. 372.)

When the time came for all the members of this union to surrender these premises to the landlords in accordance with their lease, concededly they did not do so. The majority only left. A minority remained in the premises. Yet the majority had assumed control of the property and affairs of the union and had elected the present officers for that purpose and ousted the old. To secure this

control, they filed suit in the Supreme Court, which apparently upheld their election and their control of the leased premises. This control vested in the majority faction and the present officers as of the date of the election and not at the date of the decision of the court or after the expiration of the lease. On their election the new officers had the power to discipline and coerce these refractory members. (*Ostrom* v. *Greene*, 161 N. Y. 353.) Their remedy, which they apparently resorted to, was to enjoin the insurgents and obtain an order to turn over. Just why this was not effective in cleaning out the refractory members from the premises and creating a condition where a complete surrender of the premises could be made to the landlord is not shown by this record.

The landlords' right to treat the association as a holdover for another year and bound by the terms of the original lease is not predicated on the power of the minority faction to bind the majority to a new lease for another year, but on the breach by the majority of the covenant in the old lease to surrender the premises.

Associations of this kind are governed by the rule of the majority. They are not legal entities. Where they are formed for public purposes and not for profit, we find no individual liability for the association's debts. But, where the majority assumes control, it likewise assumes the power, the responsibility and the duty of seeing that the association fulfills its reciprocal obligations. Without this the association would be an utterly irresponsible body. It is inconceivable that this court should hold that such an association should be permitted to enjoy the benefits of property and at the same time be free from the duties imposed on its enjoyment. Such a philosophy would imply that by associating in groups bound by majority rule members would be protected from trespassers, but that they might themselves trespass with immunity.

It is my considered opinion that the tenants herein occupied the premises in suit after the 30th day of April, 1936, and held over, and that they thereby became tenants for the ensuing year and were in occupation at the time of the filing of the landlords' petition herein. The landlords are, therefore, entitled to a final order awarding the possession and for a personal judgment against the tenant association for the May and June, 1936, rent.