### BRANAGAN v. BUCKMAN et al.

(Supreme Court, Trial and Special Term, Madison County. May 2, 1910.)

1. PARTNERSHIP (§ 15*)—TELEPHONE ASSOCIATION.

> An association of farmers somewhat removed from the main highway, organized to construct and operate a telephone line to connect their various houses, each bearing their proportion of costs and expenses, is not a "partnership" as defined by Partnership Law (Consol. Laws, c. 39) § 2, since it was not organized for the purpose of engaging in trade or in business, and there were no profits contemplated from the business.
>
> [Ed. Note.—For other cases, see Partnership, Cent. Dig. § 2; Dec. Dig. § 15.*
>
> For other definitions, see Words and Phrases, vol. 6, pp. 5191, 5202; vol. 8, pp. 7746, 7747.]

2. ASSOCIATIONS (§ 1*)—OPERATION OF TELEPHONE.

> An unincorporated association of farmers organized to provide themselves with a telephone line, each member to pay his proportionate share of the expense of construction and operation, which is not a partnership, nor a joint-stock company, is a voluntary association, since an "association" is a body of persons acting together without a charter, but on the methods and forms used by incorporated bodies and in the prosecution of some common enterprise.
>
> [Ed. Note.—For other cases, see Associations, Cent. Dig. § 1; Dec. Dig. § 1.*
>
> For other definitions, see Words and Phrases, vol. 1, pp. 584–586.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. ASSOCIATIONS (§ 8*)—EXCLUSION OF MEMBERS—EQUITABLE RIGHTS.

Where a member of a voluntary association among farmers, organized to construct and operate a telephone line, removes from the locality and sells his interest in the association, equity cannot compel the association to grant any rights in the telephone line to the purchaser, since membership therein is a privilege which may be accorded or withheld at pleasure.

[Ed. Note.—For other cases, see Associations, Cent. Dig. § 8; Dec. Dig. § 8.*]

4. ASSOCIATIONS (§ 15*)—PROPERTY—JOINT TENANTS.

The property of a voluntary association of farmers, organized to construct and operate a telephone line, is held by the members thereof as joint tenants, and not as tenants in common, and hence a purchaser of the rights of one of its members could have no interest in the property by virtue of being a tenant in common.

[Ed. Note.—For other cases, see Associations, Dec. Dig. § 15.*]

5. ASSOCIATIONS (§ 17*)—MEETINGS—RIGHTS OF PURCHASER FROM MEMBER.

Where a meeting of a voluntary association of farmers, organized for the purpose of constructing and operating a telephone line for the use of its members, is called, all the members being notified, and 8 out of 10 being present, and a resolution is passed without opposition excluding a purchaser of the rights of one of the members from use of the line, the legality of the meeting cannot be questioned.

[Ed. Note.—For other cases, see Associations, Dec. Dig. § 17.*]

Suit by Arthur D. Branagan against Harry Buckman and others. Complaint dismissed, and judgment directed for defendants.

Joseph D. Senn and J. T. Durham, for plaintiff.
D. C. Burke and C. R. Coville, for defendants.

COMAN, J. Some time prior to the month of April, 1909, the defendants in this action, nine in number, together with one E. A. Foster, were farmers residing in the same neighborhood in the town of Stockbridge, in this county. Their farms were located on what is known as "Stockbridge West Hill," and somewhat off the main thoroughfare passing through said town from north to south. They were without the convenience of telephone service, and agreed among themselves to construct a line which should run from the village of Munnsville to their respective residences; that each should furnish the poles to be used upon his own premises; and that all other expenses of construction and the expense of operating said line should be jointly borne by them, and each should contribute equally towards such construction and operation. The line was subsequently constructed running upon and across the premises of the defendants and said Foster, outside the highway, to a point on what is known as the "Stockbridge West Road," from which point it ran upon the poles of an incorporated telephone company, known as the "Richmond-Brewer Company," to the village of Munnsville. An arrangement was made with the Richmond-Brewer Company to furnish the instruments and do the switching for them at Munnsville, and thus they were connected not only with each other, but with all the patrons of the Richmond-Brewer Company. The expenses of construction were comparatively slight. Each member of the association furnished the poles

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which were used upon his own land, and they were about 100 in number and of an average value of about 50 cents apiece. Besides the poles, the aggregate expense was about $54.50, or about $5.40 for each member. The instruments were rented from the Richmond-Brewer Company, and they were also to pay a slight rental for the privilege of running their wires upon the poles of the said company.

In the spring of 1909, Foster decided to move away from the farm which he had been occupying, and made an auction of his personal effects. Among other things advertised and exposed for sale was all his right, title, and interest in and to the telephone line in question, and the plaintiff attended such auction and bid off Foster's interest in question. Prior to the auction the plaintiff talked with two or three of the other owners of the telephone line, and in effect asked them if it would be satisfactory if he should purchase Foster's interest, and if he would be allowed to connect his home with the telephone line. The replies which he received to these inquiries were somewhat noncommittal, and on the evening of the day of the auction sale a meeting of the members of the association was held, and a resolution was duly adopted to the effect that there should be no more wires strung to extend the wire in any direction. Eight of the members of the association were present at this meeting. It appears from the evidence in this case that some of the members of the association were present at the auction and knew that Foster's interest in the telephone line was to be offered for sale. No protest was made by any member of the association against the sale, and the son of one of the members of the association was a bidder at the sale. Subsequently, and before any action was taken by the plaintiff toward making a connection with the line in question, he was notified of the action which had been taken by the association at its meeting.

The plaintiff's house was located about one-half mile distant from the telephone line at its nearest point, and, in order to make a connection, it was necessary for him to construct a line of wires and poles across his own premises for a distance of about half a mile. This he proceeded to do and installed an instrument at his house and made a connection with the line at a point upon the premises of the defendant Harrington. The point where the connection was made was just outside the highway line and upon the land of Harrington. The plaintiff's connection was thus made about the last of April, 1909, and he used his telephone until about the 23d of May, when the defendants cut the wire at the point of connection, thus disconnecting the plaintiff from the line in question. The connection was again made by plaintiff, and on the 28th day of May the defendants again cut the line, whereupon the plaintiff brought this action, by which he seeks to enjoin and restrain the defendants from interfering with or preventing the plaintiff from connecting his residence with said line, and for a judgment and decree establishing the plaintiff's ownership to an undivided one-tenth interest in the telephone line and establishing his right to the use thereof on equal terms with the other owners.

The association was never incorporated, and no written articles of association were ever drafted. The object and purpose of the association is, therefore, to be gathered from the conversations between the

members at the inception of the organization and from their subsequent conduct and acts. There is no claim that the association ever had any purpose or intention of engaging in the telephone business for a profit, and it is entirely clear that their only purpose in establishing the telephone line was to secure to themselves the conveniences of a telephone connection for the members of the association.

There are some facts in this case as established by the plaintiff which appeal with a good deal of strength to the equity side of the court, and I think that I should be quite inclined to grant the relief asked for, except that I am satisfied that there are insuperable legal objections in the way of granting such relief.

It is conceded by all the parties to this action that the association into which the parties entered was not a partnership. As has been already stated, it was not a corporation. It was not a joint-stock association, as it had and issued no stock. To my mind it follows, therefore, as a necessary legal sequence, that it was an organization known to the law as an "association" or a "voluntary association."

A "partnership" is defined by the statutes of this state (Partnership Law [Consol. Laws, c. 39] § 2) as follows:

"A partnership, as between the members thereof, is the association, not incorporated, of two or more persons who have agreed to combine their labor, property and skill, or some of them, for the purpose of engaging in any lawful trade or business and sharing the profits and losses, as such, between them."

The association into which these parties entered lacked two of the necessary elements of a partnership, to wit: It was not organized for the purpose of engaging in trade or business, and there were no profits contemplated from the business, and, therefore, no contemplation to share in profits.

The distinction between corporations, copartnerships, joint-stock associations, and voluntary associations is very clearly pointed out by Judge Vann in the case of Ostrom v. Greene, 161 N. Y. 353, 360, 361, 55 N. E. 919, 921, as follows:

"Corporations, copartnerships, joint-stock associations, and voluntary associations are organizations of human beings for convenience in transacting business, whether the object be to make money or to do charitable or philanthropic work. They all have some points in common, but in some respects each differs from all the others. The points of resemblance sometimes lead to confusion in determining the rights, powers, and liabilities of the organization under consideration at the time the question arises. The plaintiffs' association was neither a corporation nor a copartnership, and, while it resembled both in some respects, it differed materially from either. It had none of the statutory rights of a corporation unless the right to sue and be sued in the name of its president may be of a corporate nature. Code Civ. Proc. § 1919. It had no charter from the state giving it certain powers and subjecting it to certain limitations and liabilities. It had no right to use a common seal, no power of perpetual succession, or of contracting under a corporate name. It was not an artificial person and had no distinct existence independent of its members. It was not a collective whole, which, as such, could hold property or dispose of it. Neither did its members possess the powers or share the responsibilities of copartners in all respects, for one was not presumed to be the agent of all, the death of one did not dissolve the association, and no member was liable to a creditor unless in some way he assented to the contract creating the liability. Lafond v. Deems, 81 N. Y. 507, 514; In the Matter of St. James' Club, 2 De Gex, M. & G. 383;

Flemyng v. Hector, 2 M. & W. 172. It was not a joint-stock company, which is simply an elaborate copartnership to some extent regulated, or, at least, recognized, by statute because it could issue no stock, was not organized to make money in order to divide it among its members, and the right to membership was not transferable. Laws 1894, c. 235; Const. N. Y. art. 8, § 3."

An "association" is defined to be a body of persons acting together without a charter, but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise. 4 Cyc. 301. This definition seems to fully describe the organization into which these parties entered. It is true that these associations are usually formed for some patriotic or social purposes, such as clubs, charitable associations, patriotic associations, etc. Nevertheless, the accepted definition of an "association" is broad enough to cover any such organization not created for the purpose of doing business for a profit. It seems to be the unanimous view of the courts and of the text-writers that membership in such an association is not transferable, at least without the consent of the association itself. Ostrom v. Greene, 161 N. Y. 361, 55 N. E. 919; Burt v. Oneida Community, 137 N. Y. 346, 33 N. E. 307, 19 L. R. A. 297; 4 Cyc. 302.

Such membership is a privilege which the association may accord or withhold at its pleasure, and a court of equity has no jurisdiction to compel the admission of a person not regularly elected, even though, as in the case of a political organization or labor union, the arbitrary rejection of the candidate may prejudice his material interests. 25 Am. & Eng. Enc. Law, 1135; Taylor v. Edson, 4 Cush. (Mass.) 522; McKane v. Adams, 51 Hun, 629, 4 N. Y. Supp. 401, affirmed 123 N. Y. 609, 25 N. E. 1057, 20 Am. St. Rep. 785.

The remarks of Judge Gray in the opinion of the court in the case of McKane v. Adams, supra, I think, are especially pertinent to this case:

"It is difficult to see upon what theory the plaintiff rests his right to any relief of a legal or equitable nature. It is quite unlike the cases in the books, where an individual, having been admitted to membership of a social club or other voluntary association, for the purpose of pleasure or profit, and thereby becoming entitled to a right to participate in whatever practical rights or advantages may pertain to membership, seeks redress for some violation of his personal rights. * * * The right to be a member is not conferred by any statute; nor is it derivable, as in the case of an incorporated body. It is by reason of the action and the assent of the members of the voluntary association that one becomes associated with them in the common undertaking, and not by any outside agency, or by the individual's action. Membership is a privilege, which may be accorded or withheld, and not a right, which can be gained independently and then enforced. So when, as by the plaintiff's own showing, the committee refused to admit him as a member, or to confirm his election, he was remediless against that refusal. No rights of property or of person were affected, and no rights of citizenship were infringed upon. His allegation of the possession by the committee of a fund, proceeding from dues and contributions, is but a mere pretense to bolster up his case; but a sufficient answer is that he never became a member of the committee, and hence has never acquired any rights as such, and has no interest in any fund, either individually, or in any fiduciary capacity."

There is no evidence in this case tending to show that this association ever took any action admitting the plaintiff to membership therein, and no such claim is made. On the contrary, the evidence in this case

all shows that the association and its members were unwilling that the plaintiff should become a member or should have the benefits of the organization or its property. The plaintiff's claim rests solely upon the legal contention that he bought the interests of Foster, and thereby became a tenant in common with the other members of the association in its property and entitled to use it as one tenant in common may use the property held by himself and others in such tenancy; but the uniform course of authority is that in such an association its property is not held by the members as tenants in common, but as joint tenants.

I am unable to find, and my attention has not been called by counsel to, any reported case or to any text-book which holds that the property of a voluntary association is held by its members as tenants in common.

In the case of Burt v. Oneida Community, supra, it was distinctly held that the member withdrawing from the association had no redress against the other members of the association so far as property rights were concerned.

In the case of Ostrom v. Greene, supra, the court said:

"The right to membership was not transferable."

In 25 Am. & Eng. Enc. Law, p. 1132, it is said:

"The title, legal or equitable, to any property acquired for the use of such an association vests not in the association as such, but in the members thereof in their joint and associated capacity."

In 4 Cyc. 310, it is said:

"As a voluntary association has no separate entity, its property is deemed to be in the joint ownership of the members, who have, consequently, the right to manage, control, and dispose of it at their pleasure, subject, however, to the provisions and stipulations of the contract under which it is held, as contained in the constitution, by-laws, or other rules and regulations adopted by the society."

Even if the plaintiff had been a member of the association, it is probable that the association would have had the power to restrict the use of the telephone line to those residing within a certain distance from it. The reasons given by the defendants for the adoption of this rule were two, viz.: That the extension of the wire had a tendency to reduce the power and decrease the efficiency of the service; and that it placed an additional burden upon the association in the matter of caring for the additional line, and particularly in respect of keeping it free from ice and snow in winter. I am not greatly impressed with the force of these reasons. I do not think that the addition of the plaintiff's line would substantially decrease the power of the current or impair the efficiency of the service; and I think that, in any event, it would have been incumbent upon the plaintiff to maintain and keep in order his own line.

But this association had no constitution, rules, or by-laws. At any meeting duly held it had a right to adopt such rules as it saw fit, except that it could not do an illegal act, or adopt any measure subversive of the objects for which it was formed. 4 Cyc. 308; Ostrom v. Greene, supra. The legality of the meeting at which the resolution

referred to was adopted cannot be questioned. All the members of the association were notified, and 8 of the 10 members were present. The resolution was adopted without opposition. The association had jurisdiction of the subject-matter of the resolution. It is not the province of the courts to pass upon the wisdom or fairness of the policy indicated in the resolution, so long as it attempted nothing subversive of the purposes for which the association was organized.

My conclusion is that the plaintiff is not a member of the association, that he has no rights or interests in the property of the association, and that the complaint must be dismissed, with costs.

Judgment is directed accordingly.