[Civ. No. 2857. Third Appellate District.—February 5, 1925.]

ROBERT GREENWOOD, etc., Respondent, v. BUILDING TRADES COUNCIL OF SACRAMENTO, CALIFORNIA, et al., Appellants.

[1] VOLUNTARY ASSOCIATIONS—AGGRIEVED MEMBER—EXHAUSTION OF REMEDIES.—Where there is a controversy between members of a voluntary association, courts will not interfere until the aggrieved member has exhausted all his remedies afforded him by the constitution or by-laws of the association.

[2] ID.—REFUSAL OF MEMBERSHIP OF LOCAL UNION INTO LOCAL TRADES COUNCIL — APPEAL — HARDSHIP — EQUITY.—The fact that hardship may be suffered by a local union, a voluntary association, which has been refused admission to a local building trades council, also a voluntary association, during the pendency of the period when further proceedings before higher bodies (with which the local building trades council is affiliated) are being taken and had to establish said local union's right to admission to said local building trades council, does not obviate the necessity of such proceedings being taken, or furnish any ground for the interposition of a court of equity; the only exceptions to this rule being where the manner of taking the appeal or the proceedings attendant thereupon are made so burdensome as to practically preclude the seeking of redress in this manner.

[3] ID.—COLLECTION OF MONEY—INJUNCTION—EQUITY.—As a general proposition, a court of equity will not interfere to prevent the collection of money by one voluntary association from another, that being a pure matter of law between the respective parties.

---

1. Redress in courts against proceedings of associations, notes, 18 Am. St. Rep. 301; 59 Am. St. Rep. 198.

Jurisdiction of courts over associations, notes, 7 Am. St. Rep. 773; 114 Am. St. Rep. 24.

Remedies of members of associations, note, 59 Am. St. Rep. 198. See, also, 16 R. C. L. 423; 3 Cal. Jur. 354.

[4] ID.—INJUNCTION—RIGHT TO QUIT WORK.—The right to quit work, either individually or collectively, cannot ordinarily be restrained.

[5] ID. — LABOR — STRIKE — MOTIVE. — The motive actuating a strike, or the withdrawal of men from employment, is immaterial.

[6] ID.—COLLECTION OF PER CAPITA TAX—WITHDRAWAL OF WORKMEN—ALLEGED VIOLATION OF CONTRACT—INJUNCTION.—A case for an injunction by a local union (a voluntary association) to restrain a local building trades council (also a voluntary association), which refused to admit the former to its membership, from collecting, or attempting to collect, a certain per capita tax from the members of said union, and to restrain said council from threatening to, or actually striking or calling out members of other crafts engaged in the building industry in which the members of the local union are employed, is not one of the cases in which an injunction will lie to restrain the violation of a contract under the fifth subdivision of section 526 of the Code of Civil Procedure and the same numbered subdivision of section 3423 of the Civil Code.

[7] ID.—LABOR UNIONS.—The law relating to labor unions in relation to interference by the court as to membership and the enforcement of rules is the same as that applied to other voluntary associations.

[8] ID.—MEMBERSHIP IN VOLUNTARY ASSOCIATION—ESTABLISHMENT OF PREREQUISITE TO PROTECTION OF RIGHTS.—When the fact of membership has once been established, the court will, where property rights are involved, restrain the violation of the rules governing voluntary associations, at the behest of anyone who has suffered injury by such violations; but this relationship must first be established, and until it is established the parties are independent of each other.

[9] ID.—REFUSAL OF MEMBERSHIP—ABSENCE OF RELATION OF TRUSTEE AND CESTUI QUE TRUST.—There is no relation of trustee and *cestui que trust* between a local building trades council (a voluntary association) and a local union (also a voluntary association), where membership by the latter in the local building trades council is wanting.

[10] ID.—MEMBERSHIP—NATURE OF PRIVILEGE—RIGHTS OF MEMBER.—Membership in a voluntary association is not a right which can be gained independently and then enforced. It is rather a privilege which may be withheld, or accorded on such terms and conditions as the association sees fit to impose. Once acquired, it is a personal right, which, resting as it does in contract, can only be divested in the manner provided in the contract. The holder of such personal right of membership will be protected

4. See 16 R. C. L. 434; 15 Cal. Jur. 577.
10. See 3 Cal. Jur. 350.

against any unauthorized act or proceeding on the part of his fellow-members, either as individuals or in their official or collective capacity, by which his enjoyment of such right will be impaired or destroyed.

[11] Id.—Illegal Expulsion—Protection Extended by Courts.— When membership in a voluntary association has once been acquired, protection against illegal expulsion will be afforded by the courts.

[12] Id.—Nonadmission to Membership — Resultant Injury — Relief.—The fact that one may suffer injury by reason of nonadmission to membership in a voluntary association affords no ground for relief.

---

(1) 5 C. J., p. 1365, n. 46.   (2) 5 C. J., p. 1365, n. 46.   (3) 32 C. J., p. 57, n. 34.   (4) 32 C. J., p. 162, n. 28, 30.   (5) 32 C. J., p. 162, n. 34.   (6) 32 C. J., p. 163, n. 49.   (7) 5 C. J., p. 1365, n. 40.   (8) 5 C. J., p. 1365, n. 42.   (9) 5 C. J., p. 1365, n. 43. (10) 5 C. J., p. 1358, n. 36.   (11) 5 C. J., p. 1358, n. 38.   (12) 5 C. J., p. 1358, n. 33.

APPEAL from an order of the Superior Court of Sacramento County granting temporary restraining order. Peter J. Shields, Judge. Reversed.

The facts are stated in the opinion of the court.

P. H. Johnson and A. L. O'Grady for Appellants.

Downey, Downey & Seymour for Respondent.

PLUMMER, J.—In passing upon the petition for rehearing herein, we have concluded to restate the issues involved and our views thereon. It is therefore ordered that the opinion heretofore filed in this cause on January 6, 1925, be and the same is hereby entirely set aside and the following substituted as the opinion of the court in lieu thereof:

This is an appeal by the defendants from an order of the trial court granting a temporary restraining order or injunction whereby the defendants were restrained and enjoined from collecting, or attempting to collect, a certain per capita tax of $4.50 from members of Local Union No. 162 of the Sheet Metal Workers, and also restraining said defendants from threatening to, or actually striking or call-

---

11.   See 3 Cal. Jur. 351.

ing out members of other crafts engaged in the building industry in the city of Sacramento, in either shops or buildings, in which members of said Local Union No. 162 were employed. A hearing was had upon an order to show cause why a temporary restraining order or injunction should be not issued during the pendency of the trial of the action.

The record shows that the Sheet Metal Workers' Union, Local No. 162, was, at the time of the commencement of this action, a local union duly chartered by the Amalgamated Sheet Metal Workers' International Alliance; that the Sheet Metal Workers' International Alliance is affiliated with and chartered by the American Federation of Labor (Building Trades Department); that the Building Trades Council of the State of California is chartered by and affiliates with the American Federation of Labor (Building Trades Department); that the Building Trades Council of the City of Sacramento is a duly chartered organization of and affiliates with the Building Trades Council of the State of California; that all of the organizations herein referred to are voluntary organizations, and, through their affiliations, are connected with the American Federation of Labor (Building Trades Department); it further appears from the transcript that on or about the first day of January, 1922, the Sheet Metal Workers' Union, Local No. 162, of the City of Sacramento, was suspended by the International Sheet Metal Workers' alliance, and thereupon the affiliation of said Local No. 162 with the said Building Trades Council of the City of Sacramento ceased to exist; that thereafter, and on or about the first day of September, 1922, said Sheet Metal Workers' Union, Local No. 162, was reinstated by the International Alliance, and on or about the first day of October, 1922, delegates representing said Local No. 162 applied for admission to the said Building Trades Council of the City of Sacramento; that admission was refused on the ground that there were already delegates representing an organization known as Sheet Metal Workers' Union, No. 2, of the City of Sacramento, admitted as delegates and members of said Building Trades Council. It appears that shortly after the suspension of Local 162, and the ceasing of its affiliation with the Building Trades Council, a number of sheet metal workers of the city of Sacramento organized Sheet Metal Workers' Union, No. 2, elected delegates to the Building Trades Coun-

cil of the City of Sacramento; that said delegates applied for admission and were admitted to membership in the defendant Building Trades Council of the City of Sacramento, and ever since such admission said affiliations have continued and still continue. It further appears that the Building Trades Council of the City of Sacramento is composed of delegates representing the various local unions existing in the city of Sacramento. It further appears that, after the refusal of the defendant Building Trades Council of the City of Sacramento to admit the delegates of Sheet Metal Workers' Union, Local No. 162, the matter of the status of the delegates of Local No. 2 was brought before the annual convention of the Building Trades Council of the State of California, in March, 1923; that said Building Trades Council of the State of California approved, ratified, and confirmed the action of the defendant Building Trades Council of the City of Sacramento in seating delegates representing Local No. 2, and refusing to seat delegates representing Local No. 162; that thereafter the question in dispute was taken to the Executive Council (Building Trades Department) in behalf of said Local No. 162; that said Executive Council is composed of the officers of said Building Trades Department; the allegation of the complaint being that the Executive Council conducts all business of said Building Trades Department between conventions of said department; that said Executive Council, under the rules and regulations of said department, and according to the practice of said department, is a duly and regularly constituted tribunal for the purpose of hearing, between conventions of said department, disputes and grievances which may arise in connection with or among members of organizations affiliating with said department; that thereupon the said Executive Department rendered its decision and recommendation as follows:

"Los Angeles, Calif.
"March 30, 1923.

"At a meeting of the International Officers of the Building Trades Department, held at the Stowell Hotel at 10 A. M. on March 30th, 1923, the following decision was arrived at:

"It is decided that All Building Trades organizations in

Los Angeles shall affiliate with the existing chartered Council.

"It is further decided that the basis of representation of all local Unions shall be in accordance with the laws of the Building Trades Department.

"It is also decided that all independent or dual local Unions associated with the State Building Trades Council of California, or local building Trades Councils, shall be immediately dropped from membership, and that the State Building Trades Council and local Councils use their good offices to have said independent or dual locals affiliate with their respective International Unions.

"Unanimously adopted as read.

"WILLIAM J. SPENCER,
"Secretary-Treasurer."

It is further alleged that this decision was forwarded to the Building Trades Council of the State of California and also to the defendant Building Trades Council of the City of Sacramento, but that said Building Trades Council of the State of California and the defendant Building Trades Council of the City of Sacramento have disregarded the same and that the next tribunal before which that matter can be heard is the annual convention of said Building Trades Council Department of the American Federation of Labor, and that such convention will not be held until October, 1923, or thereabouts, and will be held in the city of Portland, state of Oregon.

The by-laws of the Building Trades Department of the American Federation of Labor, in relation to membership in local councils, provide as follows:

"Sec. 3. Membership in this council shall be confined to local unions in good standing with international unions affiliated with the Building Trades Department, which local unions must be accepted on application.

"Sec. 4. Affiliation of local unions by their national or international unions with this local council shall be required, and affiliation with central labor unions chartered by the American Federation of Labor where such central bodies exist shall be a qualification for membership in this council."

The constitution and by-laws of the defendant Building Trades Council of the City of Sacramento, in so far as pertinent to this action, are as follows:

"Section 1.   The revenue of this Council shall be derived from a per capita tax levied monthly, or as the Council may require, on all affiliated unions for the legitimate work and general support of the Council and its constituency."

As to membership, the following appears:

"Section 1.   Any union applying for membership in this Council shall be referred to the Organizing Committee, which shall investigate the application and report upon the same to the Council at its next regular meeting, whereupon a motion to admit shall be decided by a majority vote.

"Section 2.   A motion to admit being carried, the Organizing Committee shall investigate the credentials of the delegates, and if it be found that the delegates are members of the organization applying and were properly elected, they shall be seated.   The Council, however, reserves the right to object to the seating of any, or all delegates, who, in its judgment, are considered undesirable or detrimental to the best interests of the Council."

The section of the by-laws relating to quarterly cards reads as follows:

"Section one: Quarterly working cards shall be issued to Unions quarterly two weeks prior to the issue, bearing the Seal of the Council and Recording and Corresponding Secretary.   It shall be the duty of the Financial Secretary of each affiliated union to attach his signature to each card issued to members thereof. ·

"Section two: It shall be imperative for all members affiliated with this Council to carry with them their working cards while at work.

"Section three: It shall be the duty of all members of the Union affiliated with this Council to show such working card when requested to do so or when challenged by any duly accredited business agent of this Council or the Steward appointed by the Business Agent.

"Section fourth: A steward shall be appointed on each and every job or building when members of the Union in any department of the Building Industry are going to work

thereon; said steward shall carry a stewardship card showing that he has been appointed by a duly authorized Business Agent of this Council and it shall be the duty of such steward to ascertain before eight A. M. between M. and One P. M. or after five P. M. from all men going to work if they carry the current quarterly working card of the Council. Should the Steward find any man without said card or proper credentials he shall immediately report the fact to the business agent or the Secretary of the Council at such places as the Council may direct.''

It is also alleged in the complaint and appears in the transcript that the Building Trades Council of the City of Sacramento, pending the time of the settlement of the controversy relating to Local Sheet Metal Workers' Union No. 162 and Local Sheet Metal Workers' Union No. 2, sought to collect from members of said Local No. 162 the sum of $4.50 per quarter, and, in consideration of such payment, agreed to issue to the members of said Local No. 162 quarterly working cards. This sum was to be held in escrow until such time as the controversy should be settled; that some dues were paid under this agreement by Sheet Metal Workers' Union No. 162, when further payment by the members of said No. 162 was refused. The explanation given for the imposition of this tax was to place members of Local No. 162 on an equal footing with Local No. 2, the claim being made that members of Local No. 2 were subject to dues in that amount, in support of their local union and of the Building Trades Council and that the members of Local No. 162 were not subject to such dues. It further appears that under the rules and regulations of the Building Trades Council, members of unions not affiliated with the Building Trades Council of the City of Sacramento, were furnished cards authorizing them to work with regularly affiliated union workers, where the circumstances were such that affiliation could not be had. After members of Sheet Metal Workers' Local No. 162 refused to pay any further dues to the Building Trades Council of the City of Sacramento, the matter of members of other building crafts affiliated with the Building Trades Council working on jobs, or rather their inability to work on jobs with persons not

holding quarterly working cards, was called to the attention of certain employers, and also to the attention of members of Local No. 162 who were refusing to take out cards, the statement being made that, under the rules of the organization, members of crafts affiliated with the said Building Trades Council of the City of Sacramento could not work on jobs where persons were employed not holding quarterly cards, the business agent in one instance stating that he would have to call out the members of regularly affiliated crafts holding cards unless the dues were paid, and also, in one instance, one of the employers paid the dues, which dues were thereafter returned to him. It does not appear that any actual threats were used, but attention was called to the constitution, by-laws and rules of the Building Trades Council, which forbade members of affiliated unions working where there are other employees not holding quarterly cards issued under the authority of the Building Trades Council and it appears that all parties understood the meaning, force and effect of the constitution, by-laws and rules of the Building Trades Council. So far as the record shows, there were no actual acts of violence, intimidation or force. The influence used was the inference that anyone might properly draw from the constitution, by-laws and rules hereinbefore referred to. None of the employers of any of the parties referred to in this cause are made parties to this controversy. The litigation involves only a dispute between members of the voluntary associations named herein and the injunction or restraining order was issued at the instigation of one group, enjoining and restraining the members of another group from refusing to work with the first group, and also restraining the collection of money.

Sheet Metal Workers' Union, Local No. 2, referred to herein, is an independent voluntary association affiliated with the Building Trades Council of the City of Sacramento, but having no charter connection with any branch of the American Federation of Labor. This local is not made a party to this action and, therefore, is not further mentioned herein.

[1] Were this a controversy between members of a voluntary association, as argued in part by the plaintiff, the authorities all agree that courts will not interfere until the

aggrieved member has exhausted all his remedies afforded him by the constitution or by-laws of the association. This rule is clearly set forth in 3 California Jurisprudence, page 354. See, also, Martin on the Modern Law of Labor Unions, section 317, page 390. The record in this case shows that the question of admitting Local No. 162 to membership in the Building Trades Council of the City of Sacramento was taken to the state convention of the Building Trades Council of the State of California, and that said Building Trades Council decided adversely to the contentions of Local No. 162; that, thereafter, an appeal was taken to the executive council of the Building Trades Department, and a decision rendered and recommendation made as we have hereinbefore stated; that compliance with the decision and recommendation last herein referred to has been denied and refused not only by the Building Trades Council of the City of Sacramento, but also by the Building Trades Council of the State of California, of which the defendant, Building Trades Council, is a dependent member, and that the next tribunal before whom said matter can be heard is the annual convention of the Building Trades Department of the American Federation of Labor meeting at Portland, Oregon, in October, 1923. Whether further proceedings have been taken to carry the dispute to such convention, does not appear from the record. The recommendation of the executive council, however, does not purport to affect or to decide the matter of the admission or nonadmission to membership of Local No. 162, by the Building Trades Council of the City of Sacramento. [2] The fact that hardship may be suffered during the pendency of the period when such proceedings are being taken and had does not obviate the necessity of their being taken, or furnish any ground for the interposition of a court of equity. (Martin on the Modern Law of Labor Unions, *supra.*) The only exceptions to this rule are where the manner of taking the appeal or the proceedings attendant thereupon are made so burdensome as to practically preclude the seeking of redress in this manner. Nothing of that kind appears in this case.

[3] There is no controversy between the parties that, as a general proposition, a court of equity will not interfere to prevent the collection of money, that being a pure matter

of law between the respective parties.   [4]   The law is also well established in this state that the right to quit work, either individually or collectively, cannot ordinarily be restrained.   (*Parkinson Co.* v. *Building Trades Council,* 154 Cal. 581 [16 Ann. Cas. 1165, 21 L. R. A. (N. S.) 550, 98 Pac. 1027], and *Pierce* v. *Stablemen's Union,* 156 Cal. 70 [103 Pac. 324].)   [5]   The Parkinson case also lays down the rule that the motive actuating a strike, or the withdrawal of men from employment, is immaterial.   Other states have announced a different rule, but the cases which we have cited are controlling here.   To meet these objections the plaintiffs argue that there is between the parties a contractual relation, and also a relation of trustee and *cestui que trust.*   [6]   Under the fifth subdivision of section 526 of the Code of Civil Procedure and the same numbered subdivision of section 3423 of the Civil Code an injunction to restrain the violation of a contract will not lie except in certain specified cases, of which this case is not one.   Is there any such relation between the parties to this action as exists between a trustee and a *cestui que trust?*

Sheet Metal Workers' Union, Local No. 162, of the City of Sacramento is a voluntary organization chartered by the International Sheet Metal Workers' Alliance, which, in turn, is chartered by and affiliated with the American Federation of Labor (Building Trades Department).   The Building Trades Council of the City of Sacramento is likewise a purely voluntary association, chartered by and affiliated with the Building Trades Council of the State of California, which, in turn, is chartered by and affiliated with the American Federation of Labor (Building Trades Department).

[7]   The law relating to labor unions in relation to interference by the court as to membership and the enforcement of rules is the same as that applied to other voluntary associations.   As heretofore shown, the Building Trades Council of the City of Sacramento, in relation to membership, has adopted a by-law, a portion of which reads as follows: "The Council, however, reserves the right to object to the seating of any, or all, delegates, who, in its judgment, are considered undesirable or detrimental to the best interests of the Council."

It is argued that the defendant Building Trades Council of the City of Sacramento is not governed by this provision of its own by-laws, but is subject to and must act in accordance with the by-law adopted by the Building Trades Department of the American Federation of Labor, which, in relation to Building Trades Councils reads as follows: "Membership in this council shall be confined to local unions in good standing with international unions affiliated with the Building Trades Department, which local unions must be accepted on application."

As to the precedence to be given to these by-laws, the plaintiff relies upon the following cases: *Gilmore* v. *Palmer*, 109 Misc. Rep. 552 [179 N. Y. Supp. 1], *Loftus* v. *Division No. 7, Ancient Order of Hibernians* (N. J. Sup.), 60 Atl. 1119, and *Taylor* v. *Pettee et al.*, 70 N. H. 38 [47 Atl. 733]. These cases, however, are not pertinent to the issues here involved. The Loftus case deals with a by-law limiting the pecuniary benefits to be received by a member, after such member has acquired a pecuniary right and property interest under the by-laws of the parent association. The case of *Gilmore* v. *Palmer, supra*, involves the question of the unlawful suspension of a member, and the case of *Taylor* v. *Pettee* is based upon the amount of pecuniary benefits to be paid to a deceased member. Thus, all of these cases have to do with the property rights of members after those property rights have been acquired, and are no different from the holding of many other cases, that courts of equity will interfere to prevent the unlawful expulsion of a member, or the unlawful deprivation of his property rights by voluntary associations.

Lack of membership is the fundamental defect apparent in the instant case. Were the court to decree admission to membership, the Building Trades Council of the City of Sacramento, being a purely voluntary association, could immediately defeat that decree by voluntary dissolution, but when property rights are involved, the decree of the court cannot be so defeated. This statement shows that courts of equity will interfere in the one case, and not in the other. Jurisdiction in the one instance is founded upon property rights, and the protection of the rights of a member; juris-

diction is lacking in the other case for want of such conditions.

It must be remembered that all of these associations are purely voluntary organizations, not governed by any statutes and, therefore, permitted, so far as the law is concerned, to adopt any regulations they may see fit in relation to their local membership. If such local regulations are in conflict with the rules and regulations of what is called the "parent organization," or the rules and regulations governing the Building Trades Council of the State of California, then, and in that case, it is the province of the Building Trades Council of the State of California to take such measures as it may deem wise or expedient to establish harmony in the rules governing both the state and the local associations. [8] When the fact of membership has once been established, the court will, where property rights are involved, restrain the violation of the rules governing voluntary associations, at the behest of anyone who has suffered injury by such violations. But this relationship must first be established, and until it is established the parties are independent of each other. In the instant case the plaintiffs are not members of the Building Trades Council of the City of Sacramento, and they have no representation in such council. [9] We do not well see how the relation of trustee and *cestui que trust* can be held established or shown in this case so long as membership by Local No. 162 in the Building Trades Council of the City of Sacramento is wanting. In 3 California Jurisprudence, 350, section 5, the rule as to membership is stated as follows: [10] "Membership in a voluntary association is not a right which can be gained independently and then enforced. It is rather a privilege which may be withheld, or accorded on such terms and conditions as the association sees fit to impose. Once acquired, it is a personal right, which, resting as it does in contract, can only be divested in the manner provided in the contract. The holder of such personal right of membership will be protected against any unauthorized act or proceeding on the part of his fellow-members, either as individuals, or in their official or collective capacity, by which his enjoyment of such right will be impaired or destroyed." [11] When this membership has once been

acquired, protection against illegal expulsion will be afforded by the courts. (*Dingwall* v. *Amalgamated Assn. etc.*, 4 Cal. App. 565 [88 Pac. 597].)   Whether any power exists on the part of the Building Trades Council of the State of California or on the part of the American Federation of Labor (Building Trades Department) to impose any penalties, fines, or impositions upon the defendant Building Trades Council of the City of Sacramento, for and on account of its refusal to admit delegates from Local No. 162 to its membership, is immaterial, because, until that membership is established, the right to protection under the rules and regulations adopted governing voluntary associations has no application.   We have not been cited to any authority holding that the courts have any power to enforce the admission of members; the only rule which we have discovered is that which we have quoted from 3 California Jurisprudence.

[12]   The fact that one may suffer injury by reason of nonadmission to membership in a voluntary association affords no ground for relief.   "Membership in a voluntary association is a privilege which the society may accord or withhold at its pleasure, and a court of equity will not interfere to compel the admission of a person not regularly elected, even though the arbitrary rejection of the candidate may prejudice his material interests, where no rights of property or of person are affected, and no rights of citizenship are infringed upon."   (5 C. J., sec. 64, p. 1353.)   A long list of authorities is there cited in support of the rule just stated.   In the case of *Mayer* v. *Journeymen Stonecutters' Assn.*, 47 N. J. Eq. 519 [20 Atl. 492], the court followed the rule that no jurisdiction exists to compel the admission to membership in voluntary associations of persons not elected according to the rules and by-laws of the association.   They will interfere only after one has become a member to prevent the violation of some by-law or to protect or enforce a right acquired by becoming a member.   This case is almost identical with the one at bar.   A number of individuals were denied admission to the Journeymen's Stone Cutters Association, and it is alleged that an attempt was being made to prevent such nonmembers from working

at their trade, and coercing and intimidating them by refusal of members to work in the same shops with the said nonmembers. After alleging these matters, the complaint in the case further sets forth that, in consequence of their exclusion from membership, they had been deprived of the power of exercising their trade in which they could have made a living and supported their families, and have been compelled to abandon their trade and work at inferior labor at lower wages; that two master stonecutters were at the time of the application to membership in the association in need of larger numbers of skilled journeymen stonecutters than they could obtain from among the members of the association and would have given them employment but from the danger to their business which they knew would ensue, and that for these reasons they were obliged to refuse, and did refuse, to employ the two men. All of these matters are particularly set forth at great length and particularly detailed. The court said: "It appears that the complainants Hahn and Zimmerman did make some effort to obtain admission into the defendant association, but it is quite clear that they did not make application for membership regularly, as required by the by-laws, and that the question was never considered or passed upon by that body. But, if it were otherwise, has this court power to require the admission of a person to membership in a voluntary association, when it has been denied by the society? These organizations are formed for purposes mutually agreed upon; their right to make by-laws and rules for the admission of members and the transaction of business is unquestionable. They may require such qualifications for membership, and such formalities of election, as they choose. They may restrict membership to the original promoters, or limit the number to be thereafter admitted. The very idea of such organizations is association mutually acceptable, or in accordance with regulations agreed upon. A power to require the admission of a person in any way objectionable to the society is repugnant to the scheme of its organization. While courts have interfered to inquire into and restrain the action of such societies in the attempted exclusion of persons who have been regularly admitted to membership, no case can, I think,

be found where the power of any court has been exercised, as sought in this case, to require the admission of any person to original membership in any such voluntary association. Courts exist to protect rights, and where the right has once attached they will interfere to prevent its violation; but no person has any abstract right to be admitted to such membership. That depends solely upon the action of the society, exercised in accordance with its regulations, and, until so admitted, no right exists which the courts can be called upon to protect or enforce.''

In *Harris* v. *Thomas* (Tex. Civ. App.), 217 S. W. 1068, quoting from page 1077, the law in relation to membership in voluntary associations is thus stated: ''A voluntary association has the power to enact laws governing the admission of members and to prescribe the necessary qualification for membership. *Mayer* v. *Journeymen Stonecutters' Assn., supra.* Membership therein is a privilege which the society may accord or withhold at its pleasure, with which a court of equity will not interfere, even though the arbitrary rejection of the candidate may prejudice his material interest. *McKane* v. *Adams,* 123 N. Y. 609, 20 Am. St. Rep. 785 [25 N. E. 1057]; *Branagan* v. *Buckman,* 67 Misc. Rep. 242 [122 N. Y. Supp. 610.] Courts sometimes interfere where members have been wrongfully excluded or expelled, but as a rule they do not interfere with the right of an association to make laws or rules unless they are against good morals or violate the laws of the state. The courts of this state recognize the general principles above announced.'' In the language of the supreme court of New Jersey as set forth, *supra,* we may add, no case has been called to our attention where the power of the court has been exercised to enforce admission of membership in a voluntary association. The legal right to exclude Local No. 162 by the Building Trades Council of the City of Sacramento is fully established by the foregoing authorities, irrespective of its motives in so doing. If, by so doing, it runs counter to some regulation of a superior or parent organization, the penalties to be inflicted, whatever they may be, are matters to be enforced by such superior or parent organization. In the present

case, the parent organization of the defendant Building Trades Council of the City of Sacramento has approved its action and we have been pointed to no authority, decided case, or by-law which would authorize the court in reversing such action and compelling admission to membership.

The mere fact that the parties involved in this action are members of unions does not obviate the fact that, so far as the record shows, they are members of separate and distinct voluntary organizations and, therefore, stand in the same legal relation as would be the case if they were not members of any union. When Local No. 162 forfeited its charter, seceded from the International Alliance of Sheet Metal Workers, and ceased to be a member of the Building Trades Council of the City of Sacramento, it broke away from the relationship, argued by counsel, and before being reinstated and reacquiring the rights which it had theretofore held and enjoyed, it appears that another union of Sheet Metal Workers of the City of Sacramento, known as Local No. 2, was organized, comprising a large percentage of the persons who had theretofore composed Local Union No. 162, and was admitted to seats in the Building Trades Council of the City of Sacramento, and this admission and retention of membership by said Local No. 2 has been approved and confirmed by the Building Trades Council of the State of California, the immediate parent organization of the defendant Building Trades Council of the City of Sacramento.

There being nothing in this case which takes it from the rule announced by the supreme court in *Parkinson Co. v. Building Trades Council, supra,* and *Pierce* v. *Stablemen's Union, supra,* in relation to the right of individuals to withdraw from work, and it being likewise clear that a court of equity will not interfere to prevent an effort to collect money unless other circumstances give rise to the equitable interposition of the court, that the relation of trustee and *cestui que trust* is not shown to exist, it follows that there is nothing in the complaint or the record to support the temporary injunction issued herein.

It is therefore ordered that the order heretofore entered herein that the judgment herein appealed from be reversed stand as the order of this court. It is further ordered that the petition for a rehearing herein be, and the same is, hereby denied.

Hart, J., and Finch, P. J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 5, 1925.

All the Justices concurred.