THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* HERBERT RAEDER, Appellant.

County Court, Delaware County, January 7, 1937.

*Fenton & Fenton* [*Layman G. Snyder* of counsel], for the appellant.

*Charles W. Jenkins,* for the respondent.

O'CONNOR, J. A number of years ago a telephone line extending from the village of Kelly Corners up to what is known as Pink Street road in the town of Middletown, Delaware county, N. Y., was erected by the farmers and residents of that neighborhood and connected up to their respective residences. The line was constructed and maintained over the lands of the users and abutting highway with their permission. The expenses of the construction and operation of the line were borne by them jointly. No written conveyance of the easements or rights of way was obtained by the association from the persons over whose land the line passed. The permission and acquiescence of the owners of the land in the construction and maintenance of the line across their lands constituted a license revocable at will. (*White* v. *Manhattan R. Co.,* 139 N. Y. 19, 26; *Olebaum* v. *Winer,* 81 Misc. 357.) No lapse of time would raise a presumption of any grant of, or justify a prescription of, any perpetual right to maintain said line over said lands. (Real Prop.

Law, § 261.) The defendant testified that when he purchased his premises from the former owner he bought the latter's share in the telephone line. The association continued to maintain its line over said premises with defendant's consent and acquiescence.

The several owners constituted a voluntary association. (*Branagan* v. *Buckman*, 67 Misc. 242.) They held meetings, passed resolutions and elected officers. Assessments were levied from time to time on the users for maintenance and costs of operation of the line. At a meeting of the association held prior to May, 1936, a resolution was passed authorizing the executive officers to disconnect any user failing to pay any assessment levied. The defendant was one of the members of this unincorporated association and the telephone line extended across his premises.

On May 26, 1936, a meeting of the members of the association was held and an assessment of three dollars made against each of the users of the line. The defendant had notice of the meeting but did not attend. On or about June 5, 1936, the president of the association disconnected defendant's phone. He testified he did so because Mrs. Raeder, the wife of the defendant, told him to cut defendant off the line as defendant was not going to pay the assessment. This was denied by Mrs. Raeder. That night, about seven-thirty, the defendant went to the home of Mr. Kelly, the president of the association, and demanded pay for his part of the line and that the president remove the line from defendant's premises or put him back on the line by the following night, or defendant would cut and remove the telephone line from the premises. To this Mr. Kelly replied that he would put defendant back on the line if defendant would pay his assessment. The defendant said he would not pay the assessment.

On the evening of June 6, 1936, defendant cut the telephone wire across his premises and removed the same therefrom. Whereupon he was arrested and charged with violation of subdivision 6 of section 1423 of the Penal Law, tried without a jury before a justice of the peace of the town of Middletown, found guilty and given a suspended sentence. From that judgment the defendant has appealed to this court.

Section 1423 of the Penal Law provides: " A person who wilfully or maliciously displaces, removes, injures, or destroys  *  *  *
6. A line of telegraph or telephone, wire or cable, pier or abutment, or the material or property belonging thereto, without lawful authority, or who shall unlawfully and wilfully cut, break, tap or make connection with any telegraph or telephone line, wire, cable or instrument  *  *  *  is punishable by imprisonment for not more than two years." From the foregoing facts it is apparent

that the association had the right to cut or disconnect the defendant from the telephone line if he failed to pay his assessment, upon due notice of the assessment and his failure to pay within a reasonable time. He had no right to demand payment from the association for his share in the telephone line because he was disconnected for non-payment of an assessment or for any other reason. He did have the right at any time to demand that the association remove the telephone line from his premises, and, upon its failure to comply with his demand within a reasonable time, to remove it himself.

The evidence shows that the president of the association was trying to be fair with the defendant, and that he only disconnected the defendant from the line because defendant's wife told him defendant was not going to pay his assessment and instructed him to disconnect defendant's telephone.

It is undoubtedly true that the act of the defendant was unnecessary and that his rights could have been adequately protected by less arbitrary action without destruction and injury to the property of the plaintiff. His acts are open to severe criticism and condemnation. However, the question which this court has to decide is whether or not he committed the crime of which he has been found guilty.

It seems to us that the decision of Mr. Justice McNAUGHT in *Roxbury Light & Power Co.* v. *Dimmick* (196 N. Y. Supp. 320) is decisive of this case. The only distinction between that case and the case at bar is that in the *Dimmick* case the plaintiff was a trespasser *ab initio*, as he had not procured permission to erect the poles on the premises from the owner, but had procured permission from the tenant, who was occupying the premises. Here the telephone line was lawfully upon the premises of the defendant under a license revocable at will. If the association after reasonable notice failed to remove the line from defendant's premises defendant had the right to remove it himself. Defendant gave the association one day's notice to remove the wire or he would remove it from his premises. There is no evidence as to how long it would take the association to remove the line from defendant's premises and, therefore, no evidence upon which the court can determine whether one day's notice was reasonable or not. The defendant is entitled to the benefit of the doubt and, therefore, the notice must be held to be reasonable. This is so especially in view of the fact that evidently no effort was made by the association to remove the line after receiving notice from the defendant and no request was made for additional time in which to do so. Whether or not the acts of the defendant constituted a crime is so fully and ably discussed

by Mr. Justice McNaught in the *Dimmick* case that we deem a repetition of the same or any part thereof unnecessary here.

The district attorney attempts to make a distinction between the provisions of section 1423. He contends that the portion of the statute which provides: That " A person who wilfully or maliciously displaces, removes, injures, or destroys * * * A line of telegraph or telephone, wire or cable, pier or abutment, or the material or property belonging thereto, without lawful authority," is distinguishable from the language of the same section which provides: " or who shall unlawfully and wilfully cut, break, tap, or make connection with any telegraph or telephone line." He calls our attention to the fact that the first provision is disjunctive and reads, " wilfully or maliciously," while the second part of the section above quoted is in the conjunctive and reads, " or who shall unlawfully and wilfully cut," etc. However, the courts have interpreted the word " wilfully " to include *unlawfully* and the same is true as to the word " maliciously." So that it does not make much difference whether the words are used conjunctively or disjunctively.

" The word, ' wilfully ' in the statute means something more than a voluntary act, and more also than an intentional act which in fact is wrongful. It includes the idea of an act intentionally done with a wrongful purpose, or with a design to injure another, or one committed out of mere wantonness or lawlessness." (*Wass* v. *Stephens*, 128 N. Y. 123.)

" The act is malicious when the thing done is with the knowledge of plaintiff's rights and with the intent to interfere therewith. In a legal sense it means a wrongful act, done intentionally, without just cause or excuse." (*Lamb* v. *Cheney & Son*, 227 N. Y. 418.)

It consists in the intentional doing of a wrongful act without legal justification. (*People* v. *Knapp*, 152 Misc. 368.)

This is a penal statute and must be strictly construed. The act of the defendant was intentional, headstrong and voluntary. In order to find him guilty of the crime charged the court must find that his act was wantonly malicious and done with desire and intention to injure the complainant and destroy its property. Under the circumstances in this case this court does not feel warranted in holding that to be true.

The defendant should not regard this decision as an approval of his acts, nor should he or any one else consider it a license for similar acts in the future.

The defendant also complains that the justice gave the defendant a suspended sentence without fixing the duration of the probation

and this was erroneous. Under section 483 of the Code of Criminal Procedure the court has the right, not only to impose the sentence, and suspend the execution, but he also has a right to suspend the imposition of a sentence without fixing the duration thereof. Where no definite term of the suspension of the sentence has been fixed it is for the longest time for which a defendant could have been sentenced for the crime of which he has been convicted. (Code Crim. Proc. § 470-a.)

The judgment of conviction is reversed and the defendant discharged. An order may be entered accordingly.