Atifa v Shairzad (2004 NY Slip Op 50752(U))

[*1]

Atifa v Shairzad

2004 NY Slip Op 50752(U)

Decided on June 18, 2004

Supreme Court, Queens County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 18, 2004

Supreme Court, Queens County
ATIFA, etc.
against
MOHAMMED AKBAR SHAIRZAD, et al.
9462/01

Phyllis Orlikoff Flug, J.
These actions, which primarily involve the right and title to premises commonly known as 141-49 33rd Avenue, Flushing, New York, were tried jointly before this court from March 29, 2004 through to April 15, 2004. At the conclusion of the trial, the court found that there were no factual issues to be determined by the jury; that the only issues to be decided were those of law. The jury was, therefore, discharged without objections.
From the evidence adduced at the trial, the court finds the following facts to be undisputed. In 1987, ATIFA, an acronym for the Afghanistan Turkish Islamic Foundation of America, filed, with proper approval, a certificate of incorporation as a Type B, not-for-profit corporation. As stated in the Not-For-Profit Corporation Laws § 201, a Type B corporation "may be formed for any one or more of the following purposes: charitable, educational, religious, scientific, literacy, cultural or for the prevention of cruelty to children or animals" (Emphasis added). ATIFA was formed by immigrants from Afghanistan for the purpose of offering support to Afghan refugees in adjusting to their new life while maintaining their cultural and religious values.
ATIFA is run by a board of directors who are elected by members of ATIFA. At the outset, there were 57 official members and since then no new members have been added. As stated in the by-laws, it is only official members who may vote or be considered for positions within the corporation.
In 1987, ATIFA hired Mr. Shairzad to be the Imam or religious leader. As Imam, he was responsible for conducting prayer services at the mosque and providing religious guidance to the mosque's worshippers.
On April 15, 1987, ATIFA purchased property commonly known as 141-49 33rd Avenue, [*2]Flushing, New York. On that same date, ATIFA filed a Certificate of Assumed Name with the New York State Secretary of State, which allowed ATIFA to do business as "Masjid Hazrat-i-Abubakr, Immigrants of Afghanistan." Subsequent to this filing on May 8, 1987, ATIFA transferred the premises by deed, for no consideration, to "Masjid Hazrat-i-Abubakr, Immigrants of Afghanistan." Thereafter, as a result of fundraising and donations by the congregants, ATIFA was able to construct a new mosque on the property and purchase adjoining property at 141-47 33rd Avenue, Flushing, New York. The construction of the new mosque began in 1996 and was completed in 1999.
From 1987-2001, there was significant growth in the number of people worshipping at the mosque. A religious school was opened with instruction provided by the Imam. During this period, ATIFA paid the bills for upkeep of the premises and satisfied the $100,000 mortgage that was taken to pay for the initial purchase of the property; that the board of directors of ATIFA, through its members, primarily Kabir Yaqubie, and Rahman Julili, was responsible for the finances necessary to support the operation of the premises and, to that end, ATIFA maintained a bank account and collected donations under its federal tax ID number. ATIFA also paid Mr. Shairzad to be the Imam from 1987 through April 2001.
In April 2001, ATIFA'S board of directors met and voted to terminate the employment of Mr. Shairzad for raising funds with ATIFA's tax ID number without ATIFA's authority. The letter of termination which was delivered to Mr. Shairzad specifically asked him to leave the premises and advised him that if he did not do so, he would be considered a trespasser. After receiving the letter, Mr. Shairzad refused to vacate the premises. Instead, in May, 2001, Mr. Shairzad presided over an incorporation meeting wherein a new corporation named Masjid Hazrat Abubakr (MHA) was incorporated under Article 10 of the Religious Corporations Law. The locks on the premises were changed by MHA and the new corporation took control of the premises.
ATIFA, thus, commenced the action entitled ATIFA v Shairzad, Index No. 9462/01, to enjoin Mr. Shairzad and his followers (1) from entering upon ATIFA's property, including the mosque and its grounds; and (2) from disrupting or otherwise interfering with the religious services, operations and other activities of ATIFA. The second cause of action in the complaint seeks an accounting for all money collected at the mosque by Mr. Shairzad and elsewhere through the use of ATIFA's tax ID number.
In the second action herein Masjid Hazrat Abubakr v ATIFA, Index No. 10945/01, plaintiff MHA seeks a declaration that legal and equitable title to the property belongs to the plaintiff MHA and not ATIFA; that legal and equitable title to the bank accounts or any other personalty of ATIFA also belongs to MHA and not ATIFA and that ATIFA has no authority to speak for and/or make decisions on behalf of MHA. The second cause of action seeks an accounting with respect to any of MHA's funds which are now or have at any time been in the custody and control of ATIFA and/or any members of its board of directors. The third cause of action is to impose a constructive trust in favor of MHA upon any real and/or personal property where legal title is held by ATIFA. The fourth cause of action is to recover damages for fraud and the fifth cause of action is to recover for unjust enrichment.
In the action where it is named as defendant, ATIFA counterclaims pursuant to Article 15 of the Real Property Actions and Proceedings Law for a determination that ATIFA is the lawful owner and has vested, absolute, unencumbered title and fee to the property in issue; that MHA and all persons claiming under it be barred from all claims to an estate or interest in the premises and that [*3]sole and complete possession of the premises be awarded to ATIFA. By its second counterclaim, ATIFA seeks a full accounting from MHA of the funds received by MHA which belong to ATIFA.
Contrary to the assertions of ATIFA that the deed dated May 8, 1987 only transferred title to ATIFA's "doing business as" name, it is the contention of the defendants in the first action and plaintiff in the second action that said deed was executed at the insistence of the Imam so that the title owner of record would be the mosque itself and not ATIFA; that prior to its incorporation, MHA was an unincorporated religious body, and it was to that entity that the property was transferred to by deed dated May 8, 1987; and that once it incorporated in 2001 as a religious corporation, title to the property automatically vested in the new corporation. MHA further argues that even if ATIFA holds legal title, that legal title is held in trust for MHA, which from 1987 until its incorporation in 2001 was a de facto religious corporation fully protected under the Religious Corporations Law.
Even if the court accepts MHA's assertion that the transfer of property by deed dated May 8, 1987 was made to MHA's alleged predecessor, an unincorporated religious association, rather than, as argued by ATIFA, merely to ATIFA's "doing business as" name, the claim that the unincorporated religious association took title to the premises on May 8, 1987, is without merit. An unincorporated association has no existence independent of its members (Martin v Curran, 303 NY 276 [1951]). It, therefore, lacks capacity to take or hold title to real property in its own name as grantee and deeds to such unincorporated associations are void (Schein v Erasmus Realty Co., 194 App Div 38 [1920]; 43 NY Jur 2d Deeds § 26 at 446). Where, however, an unincorporated association has a definite membership to wit: a defined and identifiable group (see, Branagan v Buckman, 67 Misc 242 [1910], affd 145 App Div 950), and the deed to the association refers to an individual grantee who has capacity to take and hold title, the conveyance by deed would be held valid (see, Meiselbach v Banner, 72 NYS2d 732 [1947]).
In this case, since MHA has not established that the unincorporated religious association had a definite membership in 1987, and the deed did not refer to an individual grantee, the unincorporated association was not capable of holding title to real property. Consequently, MHA cannot, pursuant to section 403 of the Not-For-Profit Corporation Law, claim title to the property in issue by virtue of its attaining corporate status in 2001 (See Not-For-Profit Corporation Law § 403; Kiamesha Development Corp. v Guild Properties, Inc., 4 NY2d 378 [1958]).
In any event, even had the unincorporated association had a definite membership in 1987, the deed dated May 8, 1987, which allegedly transferred ownership of the property in issue, is void since section 510(a)(3) of the Not-For-Profit Corporation Law requires judicial approval of the "sale, lease, exchange or other disposition of all or substantially all" of the assets of a Type B or Type C corporation and in this instance no such approval was obtained. (64th Associates L.L.C. v Manhattan Eye, Ear & Throat Hospital, NY3d , 2004 WL 1243238 [2004]; Rose Ocko Foundation Inc. v Lebovits, 259 AD2d 685 [1999]; Matter of Agudist Council of Greater New York v Imperial Sales Company, 158 AD2d 683 [1990]).
Despite its incorporation in 2001, MHA has no rights, legal or equitable to take over the premises owned and operated by ATIFA since its incorporation in 1987. This case is distinguishable from In re Kaminsky (251 App Div 132 [1937]) where the original corporation had ceased to function for approximately 20 years and a new corporation, which was not legally constituted, but which acted as if it was for more than 15 years without anyone questioning its legality, was held to [*4]have had a de facto corporate existence. In contrast to In re Kaminsky (supra), ATIFA is still a functioning corporate entity which has never abandoned its duties and obligations. It has a board of directors, corporate officers and governing by-laws and its official members are, for the most part, still living and participating in the corporation's activities.
Notwithstanding, the above determination, the court notes that since ATIFA is a Type B not-for-profit corporation which was formed for religious purposes, and which continues to primarily operate as a religious corporation, ATIFA is governed by both the Not-For-Profit Corporation Law and the Religious Corporations Law (see, Watt Samakki Dhammikaram Inc. v Thenjitto, 166 Misc 2d 16 [1995]; Matter of Lueken, 97 Misc 2d 201 [1978]). Thus, any actions taken by ATIFA must comply, not only with the requirements of the Not-For-Profit Corporations Law, but also with the provisions of the Religious Corporations Law. In this instance, however, there are no allegations in MHA's complaint or proof adduced at trial, that ATIFA has failed to comply with the provisions of either statute.
ATIFA is, thus, awarded judgment against the defendants in the action entitled ATIFA v Shairzad, Index No. 9462/01, and on its counterclaims against the plaintiff in the action entitled Masjid Hazrat Abubakr v ATIFA, Index No. 10945/01. The court finds and declares ATIFA to be the legal owner of all right, title and interest in the property known as 141-49 33rd Avenue, Flushing, New York; that MHA and all persons claiming under it are barred from all claims to a legal estate or interest in the premises and that ATIFA is entitled to sole and complete possession of the premises. To that end, MHA is directed to turn over possession of the premises to ATIFA within 30 days after service of this order with notice of entry. MHA and Mr. Shairzad are directed to account to ATIFA for all money collected while MHA was in control of the premises on or before September 1, 2004 by certified mail directed to plaintiff's attorney.
Judgment is also awarded to ATIFA dismissing the actions brought against it by MHA for constructive trust, fraud and unjust enrichment. These claims are unsupported by the facts inasmuch as MHA was first incorporated in 2001 and was, therefore, not even in existence when alleged misrepresentations were made.
The attorneys are directed to pick up all exhibits from the court no later than July 16, 2004.
Settle judgments.
 J.S.C.